# *Ex parte* Powell.

### *Application for Writ of Habeas Corpus.*

1. *Pardon; delivery and acceptance necessary.*—A pardon, in order to be complete, must, in contemplation of law, be delivered. and accepted.

2. *Same; delivery of.*—The principles applicable to the delivery of a pardon and to the delivery of an ordinary deed of gift must be considered as analogous.

3. *Same; acceptance of; when presumed.*—Being an act of mere clemency, without conditions, the law presumes that a pardon was accepted, in the absence of evidence showing the prisoner's dissent.

4. *Same; what operates as delivery and acceptance of.*—Upon the application of a convict, sentenced to the penitentiary, the Governor caused to be prepared, and signed an instrument in the usual form of a pardon, directed to the warden of the penitentiary, declaring the convict pardoned of the crime of which he had been convicted, and concluding with an order that he "be at once restored to liberty." It was then, "for the benefit" of the convict, delivered to the Secretary of State, who attested the same by affixing his signature and the seal of the State, pursuant to the duty imposed on him by statute; and thereupon it was transmitted by mail to the warden, who received it on the day following, and the Governor notified the prisoner's counsel by letter that he felt it to be his duty to grant the pardon, and he had ordered it accordingly. At the time the instrument was received by the warden, the convict was in the jail of the county in which the conviction was had, subject to the order of the warden, under the act of February 7th, 1879, providing for the conveyance of convicts to the penitentiary, and the clerk of the court had notified the warden of the fact of conviction, and that the convict was in said jail. This act makes it the duty of the clerks of the circuit courts, at the end of each term, to promptly inform the warden what convicts had been sentenced to the penitentiary at that term, and that they were then in the county jail, "subject to his order;" and it authorizes the warden, and makes it his duty, to thereupon remove such convicts. The warden, on receiving the instrument, returned it to the Governor, with the statement that he held no such person as the convict in his custody; and the Governor then withheld it from the prisoner. It was the custom of the warden, when such pardons were received, to discharge the person pardoned from custody, and to "place the pardon on file in his office, as authority for making such discharge." *Held,*

(*a*) That the convict was, at the time the pardon was received by the warden, in his constructive custody, and subject to his order and control.

(*b*) That the warden was not the mere messenger of the executive to deliver the pardon, but the constructive agent of the convict to receive it.

(*c*) That the delivery of the pardon to the warden was, in accordance with usage, a delivery to the convict, who is presumed to have accepted it, and that it thereby became complete and irrevocable.

Application to this court for a writ of *habeas corpus*, the writ having been refused by the Hon. SAMUEL H. SPROTT, Judge of the Sixth Judicial Circuit.

[Ex parte Powell.]

The ground of the application was, that the relator had been pardoned of the crime, of which he had been convicted, and for which he was held in custody. The facts necessary to an understanding of the points decided are sufficiently stated in the opinion, except that it may be added that, after the warden of the penitentiary returned the pardon to the Governor, as stated in the opinion, the Governor withheld it from the prisoner.

Gaston A. Robbins, for relator, cited 2 Hawk. P. C. § 13; *Hunt's case*, 5 Eng. (Ark.) 284; *Wyvil's case*, 5 Co. 492; 2 Greenl. Cruise, 561; Coke on Littleton, 36 a, 49 b; 1 Johns. Ch. 456; 2 Penn. 191; *Elsberry v. Boykin*, 65 Ala. 336; *Wheelwright v. Wheelwright*, 2 Mass. 447; *Hatch v. Hatch*, 9 Mass. 307; *Souverbye v. Arden*, 1 Johns. Ch. 240; *Foster v. Mansfield*, 3 Met. 412; *O'Kelley v. O'Kelley*, 8 Met. 439; 12 Ala. 734; *Shelton's case*, Cro. Eliz. 7; *Connelly v. Doe*, 8 Blackf. 320; *Somers v. Pumphrey*, 24 Ind. 240; *Hawksland v. Gatchel*, Cro. Eliz. 835; *Younge v. Moore*, 1 Strob. 48; *Kirby v. State*, 62 Ala. 51; *Com. v. Halloway*, 44 Pa. St. 210.

H. C. Tompkins, Attorney-General, for the State, cited, 1 Bish. on Crim. Law, § 907; *U. S. v. Wilson*, 7 Peters, 150; *In re Callicot*, 8 Blatch. 89; *Michael v. State*, 40 Ala. 361; *Matter of DePuy*, 3 Ben. 307.

SOMERVILLE, J.—The present case involves the question as to the validity of a *pardon*, alleged to have been granted to the relator by the Governor of Alabama. The undisputed facts show, that the petitioner was convicted of the crime of grand larceny, in the Circuit Court of Dallas county, in September, 1882; being sentenced by the judgment of the court to four years imprisonment in the State penitentiary. This judgment was affirmed on appeal to this court, on the 16th day of June, 1883.

Upon application being made to the Governor, after this conviction, in due form of law, by the petitioner, asking for a pardon, the instrument was prepared and signed by his Excellency, in the usual form, on the twenty-first day of July, 1883, and was delivered to the Secretary of State, as the record recites, "for the benefit" of the petitioner, and this officer attested the same by affixing his signature and the seal of the State, pursuant to the duty imposed upon him by the statute. Code, § 73. It declares, with due solemnity and certainty, the fact that the petitioner has been pardoned of the crime in question; by virtue of the constitutional power vested in the Governor, which authorizes him to grant pardons, after con-

viction, in all cases, except in cases of treason. and impeachment.—Const., 1875, Art. v. § 12. It purports on its face to be *directed to the warden of the penitentiary*, and concludes by ordering that the relator " be at once restored to liberty." This instrument was transmitted by mail to the warden, and was received by him on the 22d day of July, 1883, the day following its signature by the chief executive. On the same day the Governor communicated by letter to the counsel of the petitioner the fact that he felt it to be his duty to grant the pardon, and had accordingly ordered it. The warden, upon receiving, the pardon, *returned it to the Governor*, with the statement that he held no such person as Richard Powell (the relator) in his custody.

It is made to appear that the prisoner was at this time in the jail of Dallas county, subject to the order of the warden, under the provisions of the act of February 7, 1879, providing for the conveyance of convicts to the penitentiary. This statute makes it the duty of the clerk of the court to promptly inform the warden what convicts have been sentenced to the penitentiary at the last term of each court, and that they were then in the county jail, "subject to his order." The warden thereupon has authority, and it is made his duty to remove such convicts from the jail, and to deliver them to the nearest contractor, not inconsistent with the obligations of his contracts made for hiring. It is shown by the record that the clerk of the court had made this written communication to the warden, as required by the statute.

. It is one of the agreed facts of the case. furthermore, that it was the warden's *custom*, when such pardons were received, to discharge the person pardoned from custody, and to " place the pardon on file in his office, as authority for making such discharge." The foregoing are the essential facts of the case, as agreed upon by the opposing counsel.

The point of contention is, that the. pardon was never *delivered* to, or *accepted* by the prisoner.

The pardoning power, as exercised under our form of government, both Federal and State, is no doubt essentially the same, in its nature and effect, as that exercised by the representatives of the British crown, in the parent country, whence we derive our system of common law jurisprudence. A pardon, alike under both systems of government, has always been considered a mere act of grace, or governmental forgiveness of an offense, by which the penalty of crime is legally remitted.—2 Abb. L. Dict., *title*, Pardon. The proposition is undeniable, at least on authority, that a pardon, in order to be complete, must in contemplation of law be delivered and accepted.—1 Bish. on Cr. Law, § 907. In *United States v. Wilson*, 7 Pet. 150, it

[Ex parte Powell.]

was said by Chief Justice Marshall, that "a pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance." In this case, the prisoner had not only declined to plead his pardon to the pending prosecution, but had, in open court, declared that he did not desire to avail himself of it, in order to avoid the sentence.

We think the principles applicable to the delivery of a pardon and of an ordinary deed of gift must be considered as analogous. In the case of a deed, its delivery is generally said to be complete when the grantor has parted with his entire control, or *dominion* over the instrument, with the *intention* that it shall pass to the grantee or obligee, and the latter assents to it, either by himself or his agent.—2 Greenl. on Ev. § 297. The delivery may as well be made also to *a stranger*, for the benefit of the grantee. The just distinction is, that a delivery to the grantee personally carries with it the presumption of the grantor's intention to part with his dominion over the instrument; but no such presumption will be indulged, where the deed is handed to a stranger. To make a delivery to a stranger effectual in ordinary cases, the intention with which the delivery was made must be expressed at the time in some appropriate manner, although no formal words or acts are necessary.—Tiedman on Real Prop. § 814, and cases cited. Or, in other words, as said by Mr. Wharton, it must be shown that a delivery was "manifestly intended."—2 Whart. on Contr. § 677. It has been accordingly decided by this court, that where a mortgagor acknowledged the deed of mortgage, on the day of its date, before the probate judge, and left it with him for registration, and it was recorded, this was *prima facie* a delivery, although the mortgagee never had possession of the deed, and knew nothing of its existence until after the death of the mortgagor.—*Elsberry v. Boykin*, 65 Ala. 336. It was declared in the same case that, the conveyance being for the benefit of the grantee, without conditions attached, the acceptance of the grantee would be presumed, and could be repelled only by proof of his actual dissent. Such is the prevailing rule as to acceptance, where an instrument is purely beneficial to the party to whom it is made, and is freed from the embarrassment of any burden, duty, or condition.—2 Greenl. on Ev. § 297.

We are of the opinion in the present case, that the pardon in question must be regarded as having been constructively delivered and accepted, in legal contemplation. The delivery to the warden was a sufficient delivery to the prisoner, and the acceptance of the prisoner must be presumed, in view of his previous application for the pardon, and of its purely beneficial character.

Vol. LXXIII.

[Ex parte Powell.]

The Governor clearly intended the act of grace to the prisoner, and all the legal formalities were adopted by him, necessary to the proper execution of the instrument. He had given it his signature, and had handed it to the Secretary of State, who had attested it, and affixed the seal of the State, in all due form. The mailing of it to the warden was in itself a parting with dominion over it, and the act of grace must be deemed complete when the latter received it, if not before. This is true in view of the legal status and relationship of the warden towards the prisoner. He was not the mere messenger of the executive to deliver, but the constructive agent of the prisoner to receive. The prisoner was not, it is true, confined in the walls of the penitentiary, but he was in the constructive custody of the warden, and subject to his control and order in the Dallas county jail, under the express provisions of the statute. Acts, 1878–9, pp. 170–1. It is shown to have been the common usage to transmit pardons to the warden, and that he usually retained them as vouchers of authority to release convicts, and the parties are presumed to have had this usage in view. The pardon itself being directed to the warden, and being an executive mandate to him, ordering the release of the prisoner, is persuasive to show that it was never intended that it should go further than the warden, or be delivered to the prisoner personally. When the charter of the prisoner's pardon reached the hands of the warden, his constituted legal custodian, the executive act of grace was complete, and forever irrevocable. The warden had no more legal right to return it to the grantor through inadvertence, than he would have had to destroy it from malice.

The adjudged cases clearly sustain this view. The case of *Commonwealth v. Halloway,* 44 Penn. St. Rep. 210, was one involving the delivery of a pardon granted by the Governor of Pennsylvania to one Crosse, who had been convicted of a felony, and sentenced to imprisonment in the State penitentiary. The pardon was delivered to the United States' marshal, under the belief that Crosse was needed by the Government at Washington for special service in the War Department, and was not to be handed to him until he had performed the service required of him. The marshal, however, delivered it to *the warden* and obtained the release of the prisoner for the required service. It was said by the court that, "by usage, its delivery to the warden is *prima facie* equivalent to delivery; or is constructive delivery to the prisoner; but it is open to be proved no delivery by showing circumstances that are inconsistent with the intention to deliver." The pardon, in that case, was pronounced void, however, because procured by false and forged representations, independent of the question of delivery. In

*Ex parte Reno*, 66 Mo. 266 (s. c. 27 Am. Rep. 337), it was said that "simple intention on the part of the executive to bestow a pardon confers no right, and is perfectly nugatory until the intention may be said to be completed. This intention," it was added, "may be said to be fully completed when the pardon is signed by the executive, properly attested, authenticated by the seal of the State, and delivered, either to the person who is the subject of the favor, or to some one acting for him, or on his behalf." It being shown that it was the custom to deliver pardons to the warden, it was held that the delivery was presumptively complete when the paper came to the hands of this officer, although it never reached the personal custody of the prisoner. In this case, the instrument of pardon seems to have been purposely mislaid, or destroyed so as to prevent its personal delivery to the prisoner. Following the ruling in the Pennsylvania case, the court said: "A delivery of the pardon, under the circumstances in proof, is *prima facie* equivalent to delivery, or is constructive delivery to the prisoner." In *De Puy's case*, 3 Ben. (U. S. Dist. Ct. Rep.) 307, a pardon was granted to the prisoner by Andrew Johnson, President of the United States, and was transmitted by mail to a United States' marshal, to be by him delivered to the warden of Blackwell's Island penitentiary, where the convict was confined in the warden's custody. Before it passed from the hands of the marshal into those of the warden, it was recalled by President Grant, as Johnson's successor in the office of President. It was held by Blatchford, J., on an application for writ of *habeas corpus*, that there was no complete delivery until the pardon reached the hands of *the warden*, or keeper of the prison—that a delivery to the marshal was insufficient, because he was no more than "the messenger of the President"—a somewhat doubtful proposition, which does not seem very obvious to our apprehension. In *Marbury v. Madison*, 1 Cranch 137, which was an application for *mandamus* to compel the delivery, by the Secretary of State, of a commission as justice of the peace in the District of Columbia, it was held that the appointment was complete without a delivery of the commission. But it was added, that if delivery was deemed essential, as argued by counsel at the bar, it was not necessary that it should have been made personally to the grantee of the office. Said the great Chief Justice, who delivered the opinion of the court: "The law would seem to contemplate that it should be made to the Secretary of State, since it directs the Secretary to affix the seal to the commission after it shall have been signed by the President. If, then, the act of delivery be necessary to give validity to the commission, it has been delivered when executed and given to the Secretary for the purpose of being sealed,

recorded, and transmitted to the party." The conclusion must have been reached upon the ground, that the Secretary of State was the *agent of the law*, and not of the President, for the duty imposed upon him. In like manner, it was decided by the Supreme Court of Louisiana, in *State v. Baptiste*, 26 La. Ann. 134, that a mere communication from the Secretary of the Senate to the Governor, informing him that a recommendation for pardon had been received and acted upon favorably, is sufficient evidence of the completeness of the act of pardon, no actual delivery being deemed necessary in order to give it validity.

So we are clearly of opinion, that the delivery of the pardon to the warden of the State penitentiary, under the circumstances of the present case, was, in accordance with usage, a delivery to the prisoner, who was in the warden's constructive custody, and that the intended act of grace was then completed and irrevocable. Being an act of mere clemency, without conditions, the law presumes that it was accepted, in the absence of evidence showing the prisoner's dissent.—*Ex parte Reno*, 27 Am. Rep. 337; *Com. v. Halloway*, 44 Penn. St. 210.

The writ of *habeas corpus* and *certiorari* will be awarded by this court to bring the petitioner before us, together with the proceedings had before the circuit judge, unless, on another application before him, or some other judge having jurisdiction, the prisoner shall be discharged from custody.