## *Ex parte* CLAUDE RAY.

No. A-3873—Opinion Filed Nov. 27, 1920.

(193 Pac. 635.)

1. **PRISONS—Computing Good Time and Work Time—Prisoner Serving Separate Sentences.** Where a convicted person is committed to the state penitentiary under four separate sentences, providing that the term of imprisonment of the second or subsequent conviction should begin at the termination of the term of imprisonment of the next preceding conviction, it is the duty of the warden in computing the good time and work time to be allowed such prisoner to compute and allow the same under

each separate term as it is served, and the prisoner is not entitled to an allowance for good time and work time upon the theory that he has been sentenced to serve only a single term of imprisonment equal to the aggregate number of years of the four sentences.

2.  **SAME.** Allowing good time and work time as above indicated, where a prisoner has fully served a sentence and has begun to serve a second or other subsequent sentence, the warden of the penitentiary is without power to go behind the sentence the prisoner is then serving and deprive the prisoner of good time or work time allowed when serving the previous sentence for any infraction of the prison rules occurring subsequent to the completion of the previous term.

3.  **PARDON—Expiration Pardon Granted Upon Mistake of Facts —"Delivery"—Revocation.** By mistake of the warden of the state penitentiary, the Governor was notified that the term of imprisonment of petitioner would expire on and with the 25th day of November, 1920. Acting upon such misinformation, and pursuant to the custom of the Governor upon recommendation of the warden, the Governor, on the 24th day of September, 1920, forwarded to such warden what purported to be a full and free pardon to petitioner, restoring unto the said petitioner all the rights of citizenship, with provision in the face of said purported pardon that it was to take effect on the 25th day of October, 1920. It is clear from the recitals contained in said purported pardon that the same was forwarded to the warden under the following mistaken impressions of fact: (1) That the prisoner had been committed to serve only one term of six years for one embezzlement committed by him; (2) that such term would expire on and with the 25th day of November, 1920. Also it is clear from the face of the purported pardon that it was the intention of the Governor only to grant petitioner a pardon to take effect a certain number of days, (to wit, 30) prior to the expiration of his term, as an additional reward for good conduct and days worked. Prior to the date such purported pardon took effect, and after its having been forwarded to and received by the warden of the penitentiary, the Governor recalled the same, took it into his possession, where the same has remained ever since the 21st day of October, 1920. Held, that a pardon is, in effect, a private deed of the executive, to the validity of which delivery is essential. Held, further, that where a full, free, and unconditional pardon immediately operative if granted for an offense, and delivered to the warden of the penitentiary, in which the prisoner is confined, its receipt by such warden is in legal effect a delivery to the prisoner himself. Held, further, that an unconditional

pardon immediately operative, once delivered and accepted, cannot thereafter be revoked except for fraud in its procurement. Held, further, that there has been no delivery of the purported pardon relied upon in this proceeding to petitioner or to any one for his benefit, since the date on which the same was to become a valid and operative act; and that the parties stand in the same relative position as if the Governor had indited, and had attested, a full and free pardon to a prisoner to take effect immediately but had never delivered the same. Held, further, that, under such circumstances, the petitioner cannot claim that any benefits have accrued to him by reason of the forwarding of such purported pardon to the warden of the penitentiary before the date on which the same was to become effective.

Original application by Claude Ray for writ of *habeas corpus*. Writ denied.

## Statement of Facts.

This is an original application in this court for a writ of habeas corpus, in which the petitioner, Claude Ray, alleges that he is unlawfully imprisoned and restrained of his liberty by Fred C. Switzer, warden of the Oklahoma state penitentiary, at McAlester, Okla., and that the cause of this restraint is as follows:

"On the 1st day of September, 1917, your petitioner entered a plea of guilty on a charge of embezzlement in Oklahoma county in the district court at Oklahoma City, Okla., and that at said time it was mutually agreed by and between your petitioner and the county attorney and Attorney General of the state of Oklahoma that he, the petitioner herein, should receive a sentence of six years; and your petitioner shows that he was sentenced in four cases, one case of two years, one case of two years, one case of one year, and one case of one year, making a total of six years, and in each case the sentence was to begin at the termination of the other case, respectively, until all sentences were served; petitioner further says that he was immediately transferred to the Oklahoma state penitentiary at McAlester, Okla., and is now confined in said prison and has been confined in said prison since said date.

"Your petitioner further says that under the laws of the state of Oklahoma and under the customs of the prison authorities of the Oklahoma state penitentiary, he is allowed, for good behavior, certain 'good time' and in addition thereto certain 'work time'; that he has worked ever since he has been confined in said prison and that under the law and under the rules of said prison he has been allowed said 'good time' and said 'work time" by said warden, and that his time would expire on the 25th day of November, 1920. Your petitioner further shows that it has been the custom of the Governor of the state of Oklahoma to pardon prisoners in the recommendation of the warden of said prison 30 days prior to the expiration of their terms as a reward of good conduct and days worked; your petitioner shows that his record was clear and that he committed no infraction against the regulations of said prison and that he worked constantly while confined in said prison and that the warden of said prison sent a certificate to the Governor of the state of Oklahoma recommending said prisoner for pardon under said customs and the Governor issued a pardon to this petitioner, said pardon to take effect on the 25th day of October, 1920.

"Petitioner further shows that said pardon was duly executed by the Governor of the state of Oklahoma and was duly attested by the Secretary of State and the Great Seal of the state of Oklahoma placed thereon; that said pardon was placed in the United States mail and in due course transmitted to said Fred C. Switzer, warden of said prison; that same came into possession of said warden on the 25th day of September, 1920; that said petitioner worked in the record office of the state prison and that said pardon was delivered to him in said office by W. G. Duncan, the officer of said prison in charge of record office of said prison, and same was accepted by him; your petitioner further states that on the 20th day of October, 1920, Hon. W. A. Collier, pardon and parole attorney, wrote to said warden, asking him to return said pardon to him at Oklahoma City, and in compliance with said order, said

warden did return said pardon to said pardon attorney; petitioner further shows that said warden has refused and still refuses to discharge this prisoner from said prison; that under the laws of the state of Oklahoma he is entitled to release from said prison on account of said pardon; petitioner further shows that he is informed and believes and therefore avers, that said warden now intends to and will unless so ordered by this court, hold this prisoner until the 21st day of April, 1921, holding that the said prisoner is entitled only to good time and work time as follows:

"Good time and work time for two years' sentence; good time and work time for another two years' sentence; good time and work time for one year sentence; and good time and work time for another one-year sentence; that good time and work time for the short sentences does not give said prisoner as much time as he would be entitled to under a straight six-year sentence; a copy of said pardon is hereto attached, marked exhibit 'A', and made a part hereof.

"Your petitioner further shows that on the 28th day of October, 1920, he filed a petition for a writ of *habeas corpus* with Judge R. L. Milton, district judge at McAlester, Okla., and the same was by him denied.

"Therefore, your petitioner prays that he be discharged under said pardon, and if the court is of the opinion that he is not entitled to discharge on account of said pardon, that the court make an order discharging said prisoner on the 25th day of November, 1920, in accordance with his rights under the law for good time and work time under a six year sentence."

The above petition is verified by the oath of petitioner, and the purported pardon relied upon is as follows:

### "Pardon

"State of Oklahoma, Executive Department.

"To all to Whom These Presents Shall Come, Greeting:

"Whereas, on the 25th day of November, 1920, the term of Claude Ray, convicted in the district court of Oklahoma county, state of Oklahoma, of the crime of embezzlement, and sentenced to serve a term of six years, expires; and,

"Whereas, it has been the custom of the Governor of Oklahoma to pardon penitentiary prisoners on the recommendation of the warden, a certain number of days prior to the expiration of their term, as a reward for good conduct and days worked; and,

"Whereas, it is recommended by Warden Hon. Fred C. Switzer that a pardon be granted the said Claude Ray to take effect upon the day mentioned below;

"Now, therefore, I, J. B. A. Robertson, Governor of the state of Oklahoma, by virtue of the authority vested in me by law, do hereby grant to said Claude Ray a full and free pardon of the said offense, to take effect on the 25th day of October, 1920, said pardon to restore unto the said Claude Ray all of the rights of citizenship.

"In witness whereof, I have hereunto set my hand and caused to be affixed the great Seal of the state of Oklahoma at Oklahoma City, this the 24th day of September, 1920.

"(Seal)

"(Signed) J. B. A. ROBERTSON,
*Governor of the State of Oklahoma.*

"Attest:   (Signed)              J. MORRIS,
*"Secretary of State."*

The application was heard before the court on the 29th day of October, 1920, on a rule to show cause why petitioner should not be released, issued to the warden of the state penitentiary, and returnable on said date, at

which time the Attorney General, and other counsel representing respondent, filed a response to said petition, in words and figures as follows:

"Comes now Fred C. Switzer, warden of the Oklahoma state penitentiary, at McAlester, Okla., by his attorneys, the Attorney General, S. P. Freeling, and Judge W. A. Collier, and in response to the writ of habeas corpus issued therein by this honorable court hereby presents the body of the said Claude Ray in said court.

"Your respondent, further answering said writ, hereby respectfully states to the court that he has custody of the person of the said Claude Ray as warden of said penitentiary, under and by virtue of four separate commitments issued out of the district court of Oklahoma county, as more fully set forth in the agreed statement of facts filed herein, and which is hereby specifically referred to and made a part of this response, the same as if fully set out.

"That under and by virtue of said commitments, the said petitioner is in the lawful custody of the said warden for the reason that the periods of time in said commitments have not yet fully expired.

"Your respondent further answering said petition for a writ of habeas corpus hereby specifically denies that the county attorney of Oklahoma county, and the Attorney General of the state of Oklahoma entered into any agreement, or could lawfully enter into any agreement with the petitioner herein, to the effect that the said petitioner should receive a sentence of six years as alleged in his petition.

"Your respondent further answering, respectfully alleges that the pardon in case No. 8341, issued by the Hon. J. B. A. Robertson, Governor of the state of Oklahoma, was never delivered to the petitioner herein, but should this honorable court, in view of the stipulation filed herein, hold that said pardon was either actually or con-

structively delivered to the petitioner herein, then it is urged by the respondent that said pardon is absolutely null and void and of no effect, for the reason that said pardon purports to pardon the said Claude Ray, petitioner herein, of a crime of embezzlement, upon which it purported he was sentenced to serve a term of six years, when in truth and in fact the said petitioner at no time was sentenced to serve a term of six years in the penitentiary of the state of Oklahoma, but was sentenced to serve four consecutive sentences as stipulated by the petitioner and the Attorney General herein.

"Your respondent, save and except as herein plead, denies generally and specifically all of the allegations and averments of the petitioner."

Thereafter, an agreed statement of facts was filed, and the cause was submitted on the petition, response and agreed statement of facts, which is as follows:

"It is hereby stipulated and agreed by and between Wallace Wilkinson, attorney for the petitioner, and S. P. Freeling, Attorney General, and W. A. Collier, for the state:

"That the facts in the above entitled cause are as hereinafter set out.

## I.

"That on the 1st day of September, 1917, the petitioner, Claude Ray stood charged in the district court of Oklahoma county on four informations with the crime of embezzlement, and that on said date the said Claude Ray entered a plea of guilty in each case. Said cases being numbers 4074, 4075, 4076, and 4077, and that at said time the district judge sentenced said defendant to serve a term of two years in the Oklahoma state penitentiary in case No. 4074, and to serve a term of two years in No. 4075, in said prison, from the date of the expiration of sentence in case No. 4074, and to serve a term of one year in No. 4076, in said prison, said sentence to begin from the date of expiration of sentence in case No. 4075. And sentenced

said petitioner in case No. 4077, to serve a term of one year in said prison, said sentence to begin at the expiration of sentence in case No. 4076, and in pursuance to said judgments and sentences, said petitioner was immediately conveyed to the Oklahoma state penitentiary at McAlester, and has since said time been confined in said prison. That when said prisoner was entered in said prison, he was entered in same on the prison records of said prison, and his time calculated as if he was to serve a straight six years' sentence; that on the margin of the record of said prison, it is shown as follows: 'Case No. 4074, 2 years; No. 4075, 2 years; No. 4076, 1 year; No. 4077, 1 year.'

## II.

"It is further stipulated and agreed that under the laws of the state of Oklahoma and the custom and usage at the prison, that a prisoner incarcerated in the prison is entitled to certain good time for good behavior, and certain extra time for work performed for the state; that the said Claude Ray made a clean record in said prison, and committed no infraction against the prison rules, and was allowed by the warden all of his good time as provided by the statute; that in addition thereto, the said Claude Ray performed labor for the state while in said prison, and was allowed by the warden his labor time, as provided by law; that the said warden figured the good time and the work time allowed by him in said institution as if said sentence was a straight six-year sentence; that under said computation. together with the allowance made by the warden, the time of said Claude Ray would have expired on the 25th day of November, 1920, but if the computation had been made as is provided by law on each sentence separately, his time would expire on the 21st day of April, 1921; that acting upon the theory that his sentence should run and his time should be computed as a regular six-year sentence, and upon the custom of the Governor to grant a pardon of 30 days before the expiration, the warden served up to the pardon and parole attorney the record of the

said Claude Ray with the recommendation that his citizenship be restored; that acting upon said recommendation and the usages and customs heretofore existing, the Governor of the state of Oklahoma issued a pardon on the 24th day of September, 1920, to take effect on the 25th day of October, 1920. Said pardon was duly attested by the Secretary of State, and sealed with the Great Seal of the state of Oklahoma; that the same in due course was mailed to the warden of the Oklahoma state penitentiary, and received by him on or about the 25th of September, 1920, and remained in the hands of the warden until October 21, 1920. That on October 20, 1920, the pardon and parole attorney, by the direction of the Governor, wrote to the warden to return said pardon, and same was on the 21st day of October, 1920, returned to the pardon and parole attorney by the warden, where the same has remained ever since said date.

### III.

"It is further stipulated and agreed that the petitioner herein was employed in a clerical capacity in the record clerk's office at the penitentiary, and that the pardon heretofore referred to, together with numerous other pardons for persons incarcerated in said prison, were, by error of the mail clerk, delivered to the office of the record clerk of said penitentiary; that said record clerk in examining said pardons observed that there was included therewith a certain pardon for Claude Ray, the petitioner herein, and made the statement to said Ray, 'Here is your pardon'; that the said Ray requested to see said pardon, and that the record clerk, in pursuance to said request, handed Claude Ray the pardon, and the said Ray, after reading the same, handed it back to the record clerk; that the said record clerk took the said pardon, together with other pardons referred to, and delivered them to the warden of the penitentiary, who was the proper custodian thereof. And in this connection it is stipulated that at the time the record clerk exhibited the said pardon to the said Ray, as herein stated, that said transaction occurred some weeks prior to

the 25th day of October, 1920, the same being the date the pardon, as shown by the original hereto attached, became effective.

### IV.

"It is further stipulated and agreed that the said Ray now, and has at all times been ready to accept and to receive the benefits of the said pardon.

### V.

"It is further stipulated and agreed that the writ of *habeas corpus* was sued out before the district judge on, to wit, the 28th day of October, 1920, and relief was denied by said judge."

*Wilkinson & Scott*, for petitioner.

S. P. *Freeling*, Atty. Gen., *Wm. H. Zwick*, Asst. Atty. Gen., and *W. A. Collier*, Pardon and Parole Atty., for respondent.

MATSON, J. (after stating case as above). On the submission of this cause, counsel representing petitioner waived the ground that petitioner was entitled to be discharged because he had served his sentence, irrespective of any pardon granted to him by the Governor of this state, and relied exclusively on the right to be discharged because of the benefits accruing to him by reason of a pardon granted to him by the Governor, above set forth.

In view of the fact, however, that many other convicted persons are confined in the state penitentiary under similar separate commitments for different offenses, the court was asked to establish in this case a proper rule for the guidance of the warden of the state penitentiary in the allowance of good time and work time to such of those prisoners committed under separate judgments of conviction for more than one offense under the same conditions as in this.

Section 2809, Rev. Laws 1910, provides:

"When any person is convicted of two or more crimes, before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first term of imprisonment to which he shall be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be."

Section 5957, *idem,* also provides:

"If the defendant have been convicted of two or more offenses, before judgment on either, the judgment may be that the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses."

It appears conclusively from the provisions of the foregoing statutes that it was the duty of the trial judge, in pronouncing sentence for the separate embezzlements for which petitioner had been convicted in the district court of Oklahoma county, to make the imprisonment in the second conviction commence at the termination of the first term of imprisonment, and to make the term of imprisonment in the third conviction to begin at the termination of the term in the second, and to make the term of imprisonment in the fourth conviction to begin at the termination of the term in the third; so that it is clear that where a convicted person is committed under four separate commitments providing, as each did in these cases, that the term of the second or subsequent conviction should begin at the termination of the term of imprisonment of the next preceding conviction, that it is the duty of the warden of the penitentiary, in computing the good time and work time to be allowed to the prisoner, to compute and allow the same under each separate term as it is served, and the

prisoner is not entitled to an allowance for good time and work time upon the theory that he has been sentenced to serve only a single term of imprisonment equal to the aggregate number of years of imprisonment under the four sentences and commitments.

So that in this case, under the agreed statement of facts, the prisoner had fully served the first three terms of imprisonment for which he was sentenced, and the warden of the penitentiary would be powerless to go back and deprive the prisoner of good time and work time under any of such sentences; but the prisoner had not completed serving the fourth term of imprisonment, and under the agreed statement of facts, computing the time as the court holds it should be computed, the prisoner would not fully serve and satisfy such term of imprisonment until the 21st day of April, 1921, at which time, if his record is clear of any infraction of the prison rules during the last term, and he is entitled to full credit for good time and work time on the fourth term of imprisonment, he should be discharged.

By mistake of the warden of the state penitentiary in computing the good time and work time allowed to a prisoner committed under four separate judgments of conviction with terms of imprisonment to begin as provided in these sentences, the Governor was notified by such warden that the term of imprisonment of petitioner would expire on and with the 25th day of November, 1920. Acting upon such misinformation, and pursuant to, the custom of the Governor upon recommendation of the warden, the Governor forwarded to such warden on the 24th day of September, 1920, what purports to be a full and free pardon to the petitioner, restoring unto said petitioner all the

rights of citizenship, with the provision on the face of said purported pardon that it was to take effect on the 25th day of October, 1920.

It is clear from the face of this purported pardon upon which petitioner relies for his release, that it was issued by the Governor on the 24th day of September, 1920, under the following mistaken impressions of fact: (1) That the prisoner had been committed to serve only one term of six years for one embezzlement committed by him; (2) that such term would expire on and with the 25th day of November, 1920, when, in truth and in fact, petitioner had been committed to serve four separate terms of imprisonment for four separate crimes of embezzlement commited by him, and, further, with good time and work time properly computed and allowed, the term of imprisonment of petitioner under such commitments would not expire until the 21st day of April, 1921.

Further, it is apparent from the face of this purported pardon and from the agreed statement of facts upon which this cause was submitted, that it was the intention of the Governor only to grant petitioner a pardon to take effect a certain number of days prior to the expiration of his term (to wit, 30 days) as an additional reward for good conduct and days worked.

A pardon is, in effect, a private deed of the executive, to the validity of which delivery is essential. *Ex parte Crump*, 10 Okla. Cr. 133, 135 Pac. 428, 47 L. R. A. (N. S.) 1036; *United States v. Wilson*, 7 Peters, 150; *Burdick v. United States*, 236 U. S. 79, 59 Law Ed. 476; *Ex parte Powell*, 73 Ala. 517, 49 Am. Rep. 71; Ex *parte Reno*, 66 Mo. 266, 27 Am. Rep. 337, 20 R. C. L. 548.

Also, it may be stated that where a full, free and un-

conditional pardon, immediately operative, is granted for the offense and delivered to the warden of the penitentiary in which the beneficiary is confined, its receipt by such warden is in legal effect a delivery to the prisoner himself. *Ex parte Powell, supra.*

Also, it is well established that an unconditional pardon immmediately operative, once delivered and accepted cannot thereafter be revoked except for fraud in its procurement. *Re Biegle,* 7 Ohio N. P. 561; *Rosson v. State,* 23 Tex. App. 287, 4 S. W. 897; *State v. Nichols,* 26 Ark. 74, 7 Am. Rep. 600; *Ex parte Rice* (Tex. Cr.) 162 S. W. 891.

If the purported pardon here relied upon became effective upon delivery, there would be no question but that petitioner is entitled to be discharged thereunder, because the same was mailed to the warden of the penitentiary in which petitioner was confined and received by him on or about the 25th day of September, 1920. But it is clear from the terms of the purported pardon itself that it was the intention of the Governor that the same should not take effect until the 25th day of October, 1920. It cannot be successfully contended by petitioner, therefor, that any rights or benefits accrued to him under this instrument until the 25th day of October, 1920.

It appears from the agreed statement of facts that prior to the 25th day of October, 1920, the Governor recalled this purported pardon, took it into his possession, and that it has remained with him ever since the 21st of October, 1920. Apparently there has been no delivery of this purported pardon to petitioner or to any one for his benefit since the date on which the same was to become a valid and operative act. The parties stand, therefore,

in the same relative position as if the Governor had in-
dited a full and free pardon to a prisoner to take effect
immediately but had never delivered the same.

Before the prisoner can claim any benefits under a
pardon, he must establish its delivery.   The petitioner
having failed to establish that the purported pardon upon
which he relies for release in this case has ever been de-
livered to him, or anyone for him, since the date desig-
nated therein that it should become operative, and the
agreed statement of facts showing in effect that there has
been no such delivery on, or since that date, the conclu-
sion is reached by this court that petitioner cannot claim
that any benefits have accrued to him by reason of the
forwarding of this purported pardon to the warden be-
fore the same became effective.

This cause, while orally argued by counsel for peti-
tioner and respondent, has not been briefed by either side.
The question of the validity of this purported pardon
and of the benefits accruing to petitioner thereunder are
matters of first impression in this court.   Counsel for
neither side have cited a case directly in point, and dili-
gent research has failed to disclose an opinion of any
other appellate court decisive of the same question.   The
court is not unmindful of the general rule governing the
construction of pardons, that wherever the question is
doubtful the grant must be interpreted most beneficially
for the citizen or subject and most strongly against the
state.   However, in this case there seems to be no doubt
that this instrument was directed under a mistaken state
of facts, that before it became effective, or that dominion
was lost over same, it was recalled by the Governor, and
that there has never been any delivery of the same in the

sense that it can be held that the instrument passed be-
yond the control of the Governor and became a valid and
operative act on his part, to the benefits of which peti-
tioner was and is now entitled. For reasons stated, the
writ is denied.

DOYLE, P. J., and ARMSTRONG, J., concur.