## Ex parte BEN H. MASON.

No. A-5179.   Opinion Filed March 2, 1925.
(233 Pac. 785.)

(Syllabus.)

1. **Pardon—Governor's Power to Grant Executive Clemency Includes Power to Suspend Sentence upon Conditions Deemed Proper.** The power to grant, after conviction, reprieves, commutations, paroles, and pardons, upon such conditions and with such restrictions and limitations as he may deem proper, conferred upon the Governor by Const. art. 6, § 10, includes the power to suspend sentence upon such conditions as he may deem proper to impose, so long as they are not immoral, illegal, or impossible of performance; provided they are to be kept and performed or complied with during the term for which the prisoner was sentenced by the judgment of the court.

2. **Pardon—"Parole" Defined.** A "parole," as the term is used in criminal law, may be defined as the release of a convict from imprisonment upon certain conditions to be observed by him, and a suspension of his sentence during his liberty thus granted.

3. **Same—Effect of Parole by Governor.** A parole granted by the Governor under power conferred by Const. art. 6, § 10, is not a vacation of the sentence imposed, nor is it a commutation of the punishment; it suspends the execution of the sentence, and temporarily releases the convict from imprisonment upon conditions which he may accept or reject.

Application of Ben H. Mason for writ of habeas corpus.   Writ denied.

See, also, 23 Okla. Cr. 111, 212 P. 1028.

H. H. Edwards, for petitioner.

George F. Short, Atty. Gen., and John Barry, Asst. Atty. Gen., for respondent.

D'OYLE, J. This is a petition for writ of habeas corpus, filed in this court May 20, 1924, whereby Ben H. Mason, a convict in the penitentiary, seeks to obtain his discharge from the penitentiary on the ground that he has served his sentence and is now imprisoned and confined by W. S. Key, warden, without authority of law. It is averred: That said Ben H. Mason by the judgment of the district court of Carter county, rendered on the verdict of a jury finding said Ben H. Mason guilty of passing a bogus instrument, was sentenced to serve a term of one year and one day in the state penitentiary at McAlester. That on May 16, 1923, he was received at the penitentiary. That on the same day, May 16, 1923, he was by Governor Walton granted a 60-day leave of absence. That prior to the expiration of said leave of absence said Governor granted an extension of the same for a period of 90 days. That prior to the expiration of said extended leave of absence said Governor again extended said leave of absence until January 1, 1924. Copies of which are attached and made a part of the petition filed herein. That prior to the expiration of said extensions, Governor Trapp further extended said leave of absence to April 1, 1924, a copy of which is attached hereto. It appears that each leave of absence contained the following recital:

"The said judgment is to be thereafter proceeded with to all intent and purposes as though this leave had not been granted."

That on March 31, 1924, petitioner returned to the penitentiary and has since said date been confined therein; that petitioner under the laws of the state is entitled to have credit for two months "good time" for the term which sentence runs; that he is entitled to have credit for his working time, two days per week, for nine weeks

from April 1, 1924, a total of eighteen days. That petitioner has served the full term of his sentence as follows, to wit:

"As a trusty under Governor Walton's leaves of absence, seven months and fifteen days; as a trusty under Governor Trapp's leave of absence three months; served inside the prison, two months and seven days; work time allowed by rules of the prison eighteen days, a grand total of fifteen months and six days, yet notwithstanding. said expiration of sentence for one year and one day he is still restrained of his liberty and unlawfully imprisoned in the penitentiary by the warden."

The application was heard before the court June 7, 1924, on a rule to show cause why petitioner should not be released, issued to the warden, and returnable on said date.

The Attorney General, representing respondent, demurred to the petition on the ground that the same does not state facts sufficient to authorize respondent to discharge said petitioner.

The power to grant, after conviction, reprieves, commutations, paroles, and pardons, for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, conferred upon the Governor by Const. art. 6, § 10, includes the power to suspend sentence, upon such conditions as he may deem proper to impose, so long as they are not immoral, illegal, or impossible of performance, provided they are to be kept and performed or complied with during the term for which the prisoner was sentenced by the judgment of the court. Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 26 L. R. A. (N. S.) 110; Ex parte Horine, 11 Okla. Cr. 522, 148 P. 825, L. R. A. 1915F, 548.

The so-called leave of absence granted in this case, and the executive orders extending the same, were in ef-

fect orders of suspension of sentence that were, technically speaking, paroles.

In the case just cited, Ex parte Ridley, it was held that—

"A 'parole,' as the term is used in criminal law, may be defined as the release of a convict from imprisonment upon certain conditions to be observed by him, and a suspension of his sentence during his liberty thus granted."

A parole granted under the constitutional provision is not the vacation of the sentence imposed, nor is it a commutation of the punishment. It suspends the execution of the sentence, and temporarily releases the convict from imprisonment upon conditions which he may accept or reject. Accepting the conditions and benefits, upon his return to custody he is required to serve out the unexpired part of the sentence of the court as though no parole had been granted. Expiration of time without imprisonment is in no sense an execution of the judgment and sentence.

Here it appears that as a condition of the suspension of his sentence petitioner was required to abstain from the use of intoxicating liquors; faithfully follow some useful occupation and avoid all evil associations. The fact that there was no breach of the conditions imposed in no way affected his status as a convict, neither was he entitled to good time during the period of his release, because the statutory diminution of sentence is on account of good conduct while in prison.

It was argued by counsel for petitioner that under the holding of this court in the case of Ex parte Jones, 25 Okla. Cr. 347, 220 P. 978, that it is essential to the validity of an instrument purporting to be a pardon that it be authenticated under the great seal of the state as the official act of the Governor, and that the orders granting the leaves of absence, not having been so authenticated,

as the official acts of the Governor, the warden was not thereby legally authorized to release petitioner, and for this reason his sentence continued to run during his absence from the penitentiary. We deem it sufficient to say that where a prisoner accepts the benefit of an executive order, suspending his sentence, he is estopped from questioning the validity of such order.

It appearing that petitioner at the time of the hearing had served only nine weeks and seven days in prison, and was entitled to credit of eighteen days "work time," and that under the statute would be entitled to only two months "good time" for good conduct during first year of sentence, which he might have availed himself of, had he not accepted the benefits of the orders suspending sentence.

The demurrer to the petition was sustained, the rule to show cause discharged, and the writ denied.

MATSON, P. J., and BESSEY, J., concur.