## Ex Parte LENA RASMUSSEN.

No. A-5464.   Opinion Filed July 25, 1925.
(238 Pac. 231.)

J. Q. A. Harrod and W. R. Withington, for petitioner.

The Attorney General and Fred Hansen, Asst. Atty. Gen., for the State.

BESSEY, P. J.  The petitioner says that she is illegally restrained of her liberty by the sheriff of Oklahoma county; the facts as admitted by all parties being substantially as follows:

The petitioner was tried in the county court of Oklahoma county for the offense of maintaining a liquor nuisance, and in said case, on October 17, 1921, was sentenced to serve 90 days in the county jail and to pay a fine of $300.  From this judgment and sentence she appealed to the Criminal Court of Appeals, where the judgment of the trial court was affirmed on June 23, 1923.  Following the affirmance of the judgment by the appellate court on June 29, 1923, the petitioner was arrested by the sheriff of Oklahoma county and placed in the county jail.  On the same day the petitioner was released by the sheriff, pursuant to a communication from J. C. Walton, Governor of the state of Oklahoma; the communication or order from the Governor to the sheriff reading as follows:

"Hon. Tom Cavnar, Sheriff of Oklahoma County, Oklahoma City, Oklahoma—Dear Sir: In the matter of Lena Rasmussen, convicted in the county court of Oklahoma county, Oklahoma, on the 20th day of September, 1921, of the offense of maintaining a public nuisance and sentenced to serve ninety days in jail and to pay a fine of

three hundred dollars and costs of the action: By order of the Governor you are hereby instructed and directed to grant unto the said Lena Rasmussen an indefinite leave of absence from the above jail sentence and to remit the fine of three hundred dollars and costs.

"Respectfully,
"J. C. Walton, Governor."

The sheriff thereupon released the petitioner, in accordance with the communication from the Governor, and she has since been at liberty until March 3, 1925. Since her release she has lived in Oklahoma City, and up until the 14th day of February, 1925, no effort was made to reincarcerate her in the county jail or to collect the fine imposed in the liquor nuisance case. On the date last named the petitioner was charged with the illegal sale of intoxicating liquor, and while this accusation was pending, on March 3rd, a commitment was issued for her out of the county court of Oklahoma county, based upon her former conviction, by authority of which she was again committed to jail. At the time of this last incarceration the time for serving her sentence and for the payment of the fine and costs at the rate prescribed by law had expired.

On or about March 3, 1925, the then Governor of the state of Oklahoma revoked the order or leave issued by J. C. Walton and directed the sheriff of Oklahoma county to enforce the judgment against the petitioner as though no pardon, parole, or leave of absence had ever been granted. The incarceration so ordered and made the petitioner says is illegal, and she asks this court to grant her a writ of habeas corpus directing her release. It is conceded that the communication or order from Governor Walton was voluntarily sought, obtained, and accepted by the petitioner.

The petitioner, in her briefs and argument here, urges that the letter from Governor Walton was in effect

a full, complete, and unconditional pardon, and that it was not subject to revocation; that the Governor and other agents of the state so regarded it, and that the petititioner accepted it as such; that since the state failed to question the validity of the Governor's communication for a period of nearly two years after its delivery, a period extending beyond the period for which she was sentenced, and since she accepted its benefits in good faith, and was so permitted to accept them, the state is now estopped to question the force and validity of this instrument; that, if the state were permitted to question the validity of such an order at the end of 2 years, it could at any time within 5, 10, or 25 years, even, require the serving of a sentence or the collection of a fine; that the fine of $300 was expressly remitted by this executive order, and this order, whether valid or not, was a part of the consideration of the acceptance of the terms of clemency by the petitioner, and is irrevocable after full performance by both parties.

The petitioner says that this instrument is in effect an unconditional pardon, for the reason it ordered the petitioner discharged unconditionally, with a full remission of the fine, so covering everything that could be incorporated in a formal pardon regularly issued; that a fair interpretation of the order directing the "indefinite leave of absence," and the mandatory direction "to remit the fine of three hundred dollars" so indicates. It will be observed that the Governor's communication contained no conditions of good behavior, or requirements to report, or conditions of any other kind. While the word "pardon" does not appear in the instrument, no particular form of words or expression is necessary to make an instrument a pardon. Ex parte Ray, 18 Okla. Cr. 167, 193 P. 635; Sergeant v. Murphy, 22 Grat. (Va.) 789, 12 Am. Rep. 563; Jones v. Harris, 1 Strob. (S. C.) 160. In the Ray Case, supra, the court said:

"The general rule governing the construction of par-

dons" is that doubtful grants "must be interpreted most beneficially" in favor of the grantee, "and most strongly against the state."

A fair interpretation of the Governor's communication, in the light of authorities cited, would give the petitioner sufficient justification for regarding and accepting the instrument as a pardon, as distinguished from a parole, for the reason that a parole carries with it conditions upon which the prisoner obtains his liberty, in a way such that he may accept or reject the conditions. We think that the petitioner in this case was justified in accepting the communication as being equivalent to a pardon, notwithstanding the fact that it did not bear the signature and attestation of the Secretary of State.

We do not mean to say, and do not hold, that a pardon, or instrument equivalent to a pardon, is valid without such attestation. We merely hold that, under the circumstances in this case, where all parties concerned acquiesced in and acted upon the instrument as though it were a valid pardon, the state is now estopped from attacking its validity in that respect. In the case of Ex parte Taggert, 12 Okla. Cr. 439, 158 P. 288, it was held that an imprisonment based upon a breach of the terms of a pardon after the term of imprisonment had expired could not be upheld. In the instant case there were no terms imposed, so that the reasons are the more impelling against a revocation or modification of the instrument directing imprisonment, after the expiration of the time designated in the sentence.

The instant case is distinguished from the case of Ex parte Eley, 9 Okla. Cr. 76, 130 P. 821. In the Eley Case the petitioner was convicted of a misdemeanor in the county court, judgment imposing imprisonment was pronounced by the court, and a commitment issued, and the prisoner was incarcerated in jail. By agreement among

the county judge, the county attorney, and the sheriff he was released within a short time. After the expiration of a time greater than the time over which his sentence of imprisonment would have been extended, the county court ordered him recommitted to serve the original sentence. This court held that the action of the officers in discharging the petitioner was without authority of law (and we may add here, without even color of authority, being an illegal agreement of the officers to exercise the pardon and parole functions of the Governor), but that the petitioner, Eley, while at liberty, was in effect a "trusty", and that further imprisonment would be unwarranted and unlawful.

The instant case is also distinguished from Ex parte Mason, 29 Okla. Cr. 297, 233 P. 785. The petitioner in the Mason Case, while serving his sentence, was granted 60 days' leave of absence. Before its expiration the leave of absence was extended, and a succeeding Governor again extended the leave; each leave, or extension, containing this recital, "Said judgment is to be hereafter proceeded with to all intents and purposes as though this leave had not been granted," making it a conditional parole. The court very properly held that the recipient was bound by the conditions.

Under the circumstances shown in the instant case, we think the petitioner was not a "trusty," as in the Eley Case, nor bound by any conditions, as in the Mason Case. Here the sheriff, the other agents of the state, and petitioner believed that the petitioner was released upon proper authority; the petitioner accepting and acting upon the release in such belief. The state at this late time is therefore estopped from claiming that the communication from the Governor, authorizing such release, was without authority and invalid. And this holding in no way conflicts with the findings of this court in the case of Ex

272

parte Xenophon Jones, 25 Okla. Cr. 347, 220 P. 978, 34 A. L. R. 206, holding that the attestation of the Secretary of State is necessary to constitute a valid pardon.

The writ of habeas corpus is allowed, and the petitioner ordered released.

DOYLE and EDWARDS, JJ., concur.