HARTZ, Circuit Judge, concurs.
I add this concurrence simply to note the difficulty of determining whether Oklahoma law gave Mr. Warnick a legitimate expectation that his sentence could not be adjusted upward after his rebill date.
Mr. Warnick was sentenced to two terms of imprisonment. The first term arose from a single sentence, the second term arose from two concurrent sentences. After telling' Mr. Warnick that his first term was complete and while Mr. Warnick was serving his second term, the prison discovered that the first term was in fact supposed to continue for a further 53 days and adjusted Mr. Warnick’s records accordingly. At the outset it should be noted that this precise context would not arise for a federal prisoner. Federal statutes have provided that consecutive sentences are to be treated for sentence-administration purposes as a single sentence. See 18 U.S.C. § 3584(c); 18 U.S.C. §§ 4161, 4165 (repealed 1984). These statutes have never been held unconstitutional.
In Oklahoma, however, consecutive sentences are treated separately. See Okla. Stat. tit. 21, § 61.1.[1] In Ex parte Grimes, 92 Okla.Crim. 87, 221 P.2d 679, 681 (Okla.Crim.App.1950), the court wrote: ‘Where there are one or more convictions and judgments thereon, the accused should be incarcerated upon the first conviction for which a commitment is issued for the period .of time therein named. At the end of that period of confinement, the imprisonment should commence upon the second conviction and terminate in like manner, and so on for the third and subsequent convictions'.” (internal quotation ' marks omitted). The question before the district court is whether in this context an Oklahoma prisoner has such an expectation of finality with respect to a sentence that a correction to the period of confinement cannot be made after the sentence has been discharged but while the prisoner is still confined on a consecutive sentence.
Because the sentence correction here related to good-time credits, a description of the administration of these credits must precede further analysis. Good-time credit systems were adopted by statute, see, e.g., Okla. Stat. tit. 57, § 138, in part to give prisoners an extra incentive to abide by prison policies, see, e.g., State v. McCallion, 875 P.2d 93, 94-95 (Alaska Ct.App.1994); they were no part of the common law. The governing statutes authorize the Department of Corrections to promulgate regulations. See Okla. Stat. tit. 57, §§ 138(B) (giving Department power to *850 promulgate regulations governing class-level assignments), 507(b) (giving Director of Corrections general power “[t]o prescribe rules and regulations for the operation of the Department”).
Section 138 does not provide for sentence audits to correct credit-calculation errors. It does provide for an “adjustment review committee” that “[a]t least once every four ... months ... shall evaluate the class level status and performance of [each] inmate and determine whether or not the class level for the inmate should be changed.” Id. § 138(F). “Any inmate who feels aggrieved by a decision made by an adjustment review committee may utilize normal grievance procedures in effect with the Department of Corrections and in effect at the facility in which the inmate is incarcerated.” Id. But these provisions do not apply here because Mr. Warnick complains of a sentence adjustment to correct a calculation error, not a change in his class-level assignment.
The sentence-administration regulations neither clearly prohibit nor clearly permit an offset or audit for calculation errors after rebill; they are silent on the question. On one hand, the regulations contemplate adjustments of credits attributable to a prior month:
Any modifications of any type of credit for preceding months discovered through the audit process will be posted in the other column of the month through which the audit is performed. If a modification results in taking of credit previously posted, the credit will be preceded by the symbol for negative credit (-).
DOC Manual OP-060211(VI)(C)(2)(d). And audits of time calculations are provided for by DOC Manual OP-060211(VTII). On the other hand, the May 2002 audit of Mr. Warnick’s records did not take place in any of the “situations” in which “[a]udits will be performed” — for example, on reception, parole, or rebill. DOC Manual OP-060211(VIII)(A)(1). But a list of situations in which audits will be performed does not necessarily imply that those are the only situations in which an audit may be performed. For example, the Department’s “[r]esolution/action” in response to a grievance “may include any appropriate remedy as authorized by Oklahoma law.” DOC Manual OP-090124(VI)(C)(1). A sentence audit would seem to be an appropriate remedy for a grievance claiming a credit-calculation error, even though “in response to a grievance” is not one of the situations in which, according to the sentence-administration regulations, an audit “will be performed.” DOC Manual OP-060211(VIII)(A)(1) (emphasis added).
The case law likewise does not offer definitive guidance. Language in an early case strongly suggests that adjustments to good-time credits are forbidden once the prisoner has completed a sentence. In 1920 the Oklahoma Criminal Court of Appeals wrote the following concerning a prisoner serving consecutive sentences: “[I]n this case ... the prisoner had fully served the first three terms of imprisonment for which he was sentenced, and the warden of the penitentiary [was] powerless to go back and deprive the prisoner of good time ... under any of such sentences.” Ex parte Ray, 18 Okla.Crim. 167, 193 P. 635, 639 (Okla.Crim.App.1920).
But this statement in Ray is explicitly dictum. See Ray, 193 P. at 639. And the syllabus by the court in Ray limits the broader language in the opinion to circumstances distinguishable from this case. Rather than saying that good-time credits on a fully served sentence may never be adjusted, the syllabus states:
“[W]here a prisoner has fully served a sentence and has begun to serve a second or other subsequent sentence, the *851 warden of the penitentiary is without power to go behind the sentence the prisoner is then serving and deprive the prisoner of good time .., allowed when serving the previous sentence for any infraction of the prison rules occurring subsequent to the completion of the previous term,”
Id. at 635-36 (emphasis added).
Moreover, cases decided after Ray suggest that the Oklahoma courts might permit the audit and offset in this case. In Ex parte Edwards, 88 Okla.Crim. 433, 204 P.2d 547 (Okla.Crim.App.1949), the prisoner was first convicted of stealing “domestic fowl” and sentenced on that charge to two years’ imprisonment in the state reformatory. While confined he was convicted of assault with intent to kill and sentenced to a further two years’ imprisonment in the reformatory, to be served after the initial two-year sentence. Id at 547-48. After that, while still confined on the first sentence, he was convicted of murder .and sentenced to 40 years’ imprisonment. Id. at 548. He was moved to the penitentiary and booked in to serve the 40-year sentence. Id. After that sentence had been fully served, the warden held- him to serve the second two-year sentence, to be followed by the. remainder of .the first two-year sentence. Id. He petitioned for habe-as corpus, contending that because sentences are to be served in the order received, the warden’s booking him in on the 40-year sentence before he had finished serving the first two constituted a waiver of the remaining time on the first two sentences. Id. at 549.
The Oklahoma Criminal Court of Appeals put the question and answered it this way:
By reason of the failure of the Clerk at the State Penitentiary to enter the sentences in their proper order, should petitioner be discharged prior to the time the sentences imposed-upon him would be fully served? We think not.... [T]he proper procedure would be for the Warden of the Penitentiary to correct his records.... Petitioner would then be entitled to his discharge on May 12, 1950.
Id. at 550. Thus, the Oklahoma court held that time allotted to the 40-year sentence, which had been fully served, could, because of the warden’s mistake, be reclassified as time on the two two-year sentences, with the consequence.that Petitioner’s release would be delayed.
In a later case with similar facts — sentences appearing in the wrong order in the prison records — the court explained that “[a]n incorrect entry by the warden [will] not authorize the release of [a] prisoner unless it [is] shown that he [has] fully satisfied the valid sentences which [have]been pronounced against him.” Grimes, 221 P.2d at 681. And in the context of crediting to another sentence time served on an invalidated sentence, the same court quoted at' length a Fourth Circuit decision that said: “ *We emphasize[] that all that [is] involved [is] an adjustment of the administrative records of the prison authorities.’” Floyd v. State, 540 P.2d 1195, 1197 (Okla.Crim.App.1975), quoting Miller v. Cox, 443 F.2d 1019, 1021-22 (4th Cir.1971).
As further guidance, one may look to state agencies’ interpretations of state law. Under federal law when the agency that has promulgated the regulation in question has also interpreted it, courts may give that interpretation substantial deference. See, e.g., Archuleta v. Wal-Mart Stores, Inc., 395 F.3d -1177, 1184-85 (10th Cir. 2005); Gerber v. Hickman, 291 F.3d 617, 626 (9th Cir.2002) (en banc) (Tashima, J., dissenting) (“the Warden’s interpretation of the [prison] regulation is entitled to deference”). Oklahoma law appears to be the same. See Liberty Bank & Trust Co. *852 v. Splane, 959 P.2d 600, 602 (Okla.Civ.App. 1998) (“Our courts will show great deference to the interpretation given a statute or rule by the officers or agency charged with its administration, and will not disturb that construction except for very cogent reasons.”).
Here, the Department of Corrections interpreted the audit regulations when it' rejected Mr. Warnick’s claim that his sentence could not be audited after it had been fully served. On August 9, 2000, after Mr. Warnick appealed the loss of 75 credits, the Department wrote: “The Department of Corrections auditor has the responsibility and the authority to correct errors related to the service of your sentence. You were clearly not entitled to the credit and it was appropriately removed from your record.” R. doc. 1 ex. O. In a letter to Mr. Warnick five days later, the Department wrote: “The Department of Corrections has the responsibility and the authority to correct errors related to the service of sentences while an inmate is in our custody. You were clearly not entitled to the credit and it was appropriately removed from your record.” R. doc. 1 ex. P (emphasis added).
Similarly, the Warden has consistently taken the position in this litigation that the audit and offset were legal. In Auer v. Robbins, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court deferred to an interpretation of the Secretary of Labor advanced in an amicus brief.' The Court held that this “does not, in the circumstances of this case, make it unworthy of deference” because “[tjhere is simply no reason to suspect that the interpretation does not reflect the agency’s fair and considered judgment on the matter in question.” Id. The Court contrasted Bowen v. Georgetown University Hospital, 488 U.S. 204, 212-13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), in which the Secretary of Health and Human Service’s interpretation advanced in litigation was rejected because its having been adopted there for the first time and its being inconsistent with the Secretary’s prior litigation positions revealed it to be “nothing more than an agency’s convenient litigating position.”
The district court will need to determine in the first instance what, if any, deference is owed these agency pronouncements. Of course, the district court may find it convenient and expeditious to certify this issue of state law to the Oklahoma Court of Criminal Appeals.
A final point is necessary to clarify the issue before the district court. The critical double-jeopardy question in cases like this is whether state law gave the prisoner a legitimate expectation of finality in his sentence before that sentence was adjusted. Even if state law permitted the audit and offset when they took place, it is possible that this state-law result was so .unforeseeable that the correction violated a legitimate expectation of finality.
A similar question is presented when a state court changes the common law of crimes, and an adversely affected defendant argues that this denies him due process. In Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), the Supreme Court considered such a case. Rogers had stabbed Bowdery, who died 15 months later. Id. at 454, 121 S.Ct. 1693. At common law this could not be murder because of the “year-and-a-day rule”: Bowdery did not die within a year and a day of Rogers’s stabbing him. Id. at 453-54, 121 S.Ct. 1693. The Tennessee Supreme Court nonetheless affirmed Rogers’s conviction of murder by abolishing the rule. Id. at 455-56, 121 S.Ct. 1693. Relying on “core due process concepts of notice, foreseeability, and, in particular, the right to fair warning,” id. at 459, 121 S.Ct. 1693, the United States Supreme *853 Court held “that a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning ... where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,” id. at 462, 121 S.Ct. 1693 (internal quotation marks omitted). That was not the case in Rogers because the year-and-a-day rule was “widely viewed as an outdated relic of the common law,” id., had been widely abandoned elsewhere, and appeared in Tennessee cases only in dicta (although the Tennessee Supreme Court had recognized it as a part of Tennessee’s common law). Id. at 455, 462-67, 121 S.Ct. 1693. Cf. Stephens v. Thomas, 19 F.3d 498, 500-01 (10th Cir.1994) (no ex post facto violation in correctly applying statute that had been misconstrued by agency).

. Okla. Stat tit. 21, § 61.1 states:
When any person is convicted of two (2) or more crimes in the same proceeding or court or in different proceedings or courts, and the judgment and sentence for each conviction arrives at a state penal institution on different dates, the sentence which is first received at the institution shall commence and be followed by those sentences which are subsequently received at the institution, in the order in which they are received by the institution, regardless of the order in which the judgments and sentences were rendered by the respective courts, unless a judgment and sentence pro: vides that it is to run concurrently with another judgment and sentence.