## Ex parte XENOPHON JONES.

No. A-4927.   Opinion Filed Dec. 6, 1923.

(220 Pac. 978.)

(Syllabus.)

1. **Pardon—"Pardon" Defined, and Effect Stated.** A pardon is an act of grace and mercy bestowed by the state, through its chief executive, upon offenders against its laws after conviction, and a full, unconditional pardon reaches both the punishment prescribed for the offense and the guilt of the offender; it obliterates in legal contemplation the offense itself, and hence its effect is to make the offender a new man.

2. **Same—To be Evidenced by Written Instrument Subscribed by Governor.** Granting a pardon is an official act on the part of the Governor, and such an official act as the law requires to be evidenced by written instrument, to be subscribed by him.

3. **Same—Secretary of State to Countersign and Affix Seal of State—"Official Act."** Under Const. art. 6, § 18, requiring the Secretary of State, as custodian of the seal of the state, to "authenticate therewith, all official acts of the Governor, except his approval of laws," it is the duty of the Secretary of State to countersign and affix the great seal of the state to all pardons granted by the Governor, and it is essential to the validity of an instrument purporting to ` be a pardon that it should be authenticated under the great seal of the state as the official act of the Governor.

4. **Same—Pardon not Authenticated by State Seal not Entitled to Registration.** Under Const. art. 6, § 17, providing that the Secretary of State shall keep a register of the official acts of the Governor, an instrument purporting to be a pardon, not authenticated by the great seal of the state, is not entitled to be registered by the Secretary of State as an official act of the Governor.

5. **Same—Pardon not Authorizing Discharge of Prisoner Where not Authenticated by Seal of State.** The instrument in question in this case, purporting to be a pardon, signed by J. C. Walton, then Governor, was not authenticated under the great seal of the state or registered in the office of the Secretary of State. Held, that to be a valid pardon it must be authenticated under the great seal of the state, and without such authentication such instrument is insufficient in law to authorize the discharge of petitioner from the imprisonment of which he complains.

Application of Xenophon Jones for writ of habeas corpus. Writ denied.

Moman Pruiett, W. N. Redwine, Victor A. Sniggs, and O. C. Patterson, for petitioner.

George F. Short, Atty. Gen., and John Barry, Asst. Atty. Gen., for respondent.

DOYLE, J. This is an application for discharge from imprisonment in the penitentiary on the part of Xenophon Jones.

It is averred in the petition that on the 7th day of July, 1921, he was convicted in the district court of Muskogee county of manslaughter in the first degree, and was sentenced to imprisonment in the state penitentiary for a term of 25 years; that he is now confined in said penitentiary by the warden, J. H. Townsend, under said judgment and commitment; that on the 23d day of October, 1923, J. C. Walton, who was then Governor of the state of Oklahoma, by virtue of the power and authority vested in him, granted and issued to petitioner, Xenophon Jones, a full and complete pardon for said offense for which he is imprisoned, said pardon to take effect immediately, and is entitled to his discharge, but that, notwithstanding this fact, he is unlawfully and illegally restrained of his liberty by J. H. Townsend, the warden, in confinement in said penitentiary, who refuses to discharge him.

Attached to the petition, and made a part thereof, is a copy of an instrument purported to be a pardon signed J. C. Walton, Governor of the state of Oklahoma, which instrument it appears is not authenticated by the great seal of the state or registered in the office of the Secretary of State or otherwise attested.

The Attorney General filed a demurrer to said petition on the ground that the same does not state facts sufficient to authorize respondent to release said petitioner or to entitle said petitioner to a discharge from the imprisonment of which he complains. The argument of the Attorney General is that the purported pardon attached to said petition shows upon its face that it has not been presented to and authenticated by the Secretary of State or registered as an official act of the Governor, as provided and required under article 6, §§ 17 and 18, of the Constitution, and that until the same is so authenticated it is not a valid pardon.

It will be observed, as preliminary to the consideration of the question presented, that a pardon is an act of grace and mercy bestowed by the state through its chief executive, upon offenders against its laws after conviction, and a full and unconditional pardon reaches both the punishment prescribed for the offense and the guilt of the offender; it obliterates in legal contemplation the offense itself; and hence its effect is to make the offender a new man. Ex parte Crump, 10 Okla. Cr. 133, 135 Pac. 428, 47 L. R. A. (N. S.) 1036.

In United States v. Wilson, 7 Pet. 150, 8 L. Ed. 640, Chief Justice Marshall said:

"The Constitution gives to the President, in general terms, 'the power to grant reprieves and pardons for offenses against the United States.' As this power had been exercised, from time immemorial, by the executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance, we adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it.

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the

individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed. It is the private, though official act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court. It is a constituent part of the judicial system, that the judge sees only with judicial eyes, and knows nothing respecting any particular case, of which he is not informed judicially. A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown, and cannot be acted on. The looseness which would be introduced into judicial proceedings would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages.

"Is there anything peculiar in a pardon which ought to distinguish it in this respect from other facts? We know of no legal principle which will sustain such a distinction. A pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance."

In Knapp v. Thomas, 39 Ohio St. 377, 48 Am. Rep. 462, it is said:

"It is, in effect, a reversal of the judgment, a verdict of acquittal and a judgment of discharge thereon, to this extent, that there is a complete estoppel of record against further punishment pursuant to such conviction. Though sometimes called an act of grace and mercy, a pardon, where properly granted, is also an act of justice, supported by a wise public policy."

Wharton says:

"Pardon, in its technical legal sense, is a declaration on record by the sovereign that a particular individual is to be relieved from the legal consequences of a particular crime." I Whart. Crim. L. (7th Ed.) § 591a.

This definition is probably the most accurate and comprehensive, and best expresses the legal signification of the word.

The power to pardon is an executive power expressly vested by the Constitution of the state in the Governor. The language of the Constitution (article 6, § 10) is:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon, granted, stating the name of the convict, the crime of which he was convicted, the date and place of conviction and the date of commutation, pardon, parole, or reprieve."

It is to be observed that, as the Constitution has vested the pardoning power in the Governor, and clothed him with exclusive authority to grant, after conviction, pardons for all offenses, except cases of impeachment, the only limitations which have been or can be made on the power are found in the Constitution itself. Ex parte Ridley, 3 Okla. Cr. 350, 106 Pac. 549, 26 L. R. A. (N. S.) 110. The Constitution deals with the pardoning power not as a prerogative claimed by divine right, but as an adjunct to the administration of justice, recognized in all civilized governments as necessary by reason of the fallibility of human laws and human tribunals. Generally speaking, the granting of pardons is discretionary in its nature, and this discretion should be exercised upon public considerations alone. The indiscriminate exercise of the pardoning power is a blow at law and order, and is an additional hardship upon society in its irrepressible conflict with crime and criminals.

This brings us to the question in this case, as to whether or not the instrument in question upon which petitioner claims that he is entitled to his discharge, is a valid, effectual pardon without being authenticated under the great seal of the state. The question presented involves a construction of the following provisions of the Constitution:

"The Secretary of State shall keep a register of the official acts of the Governor, and when necessary shall attest them, and shall lay copies of the same, together with copies of all papers relative thereto, before either house of the Legislature when required to do so." Article 6, § 17.

"The Secretary of State shall be the custodian of the seal of the state, and authenticate therewith all official acts of the Governor except his approval of laws. The said seal shall be called 'the great seal of the state of Oklahoma.'" Art. 6, § 18.

The duty of courts in construing constitutional provisions is to give effect to the intent of the framers and of the people in adopting the same, and, whenever it is possible to do so, each provision must be construed so that it will harmonize with all others, to the end that the intent may be ascertained and carried out, and effect given to the instrument as a whole. In all cases where the meaning is clear and unambiguous the question is not what was the intention? but what is the meaning of the language used? Ex parte Crump, supra.

Under the Constitution the Secretary of State is the custodian of the great seal of the state, and is required to authenticate therewith all official acts of the Governor. In England there is one great seal by virtue of which a great part of the royal authority is exercised. The appointment of Lord High Chancellor, or Lord Keeper, is made by the delivery of the great seal into his custody. Seals were known

and used among the earliest nations of antiquity. A striking illustration is that of Jeremiah buying the field in Anathoth, where he "subscribed the evidence and sealed it, and took witnesses," much in the same way a conveyance of land is now made. Writings under seal were then of great importance; for instance, in the Book of Esther, viii, 8, we read:

"Write you for the Jews also as it liketh you, in the king's name, and seal with the king's ring, for the writing that is written in the king's name and sealed with the king's seal may no man reverse."

Chancellor Kent maintains that the object of seals is to give due solemnity and ceremony in the execution of important instruments, and not to designate any particular person, and President Pendleton said in Jones v. Longwood, 1 Wash. (Va.) 42:

"To consider it upon the reason of the thing, a seal is required to give solemnity to the act." See 34 Cent. Law Journal, 280. When the King "does pardon under the great seal, it has the full effect of the Parliament pardon." Holt, C. J., in 13 How St. Tr. 186. And "the Legislature cannot change the effect of such a pardon any more than the executive can change a law." U. S. v. Klein, 13 Wall. 128, 20 L. Ed. 519.

We have examined all the cases accessible bearing upon the question under consideration, but find only one directly in point. In Sutton v. McIlhany, an early Ohio case, 5 Western Law Journal, 356, it is said:

"A pretended pardon, issued without the seal, would be a nullity. It would be a private, and not an official act of the Governor. When the law requires an instrument to be sealed, and it becomes necessary in the court of pleading to set it up, by either party, the party pleading it must aver it has a seal. I Chitty Pl. 348, 349; 12 John. Rep. 197."

In Aetna Ins. Co. v. Hallock, 6 Wall, 556, 18 L. Ed. 948,

Mr. Justice Miller said:

"If the paper here called an order of sale is to be treated * * * as a process of any kind issued from the court, which the law required to be issued under the seal of the court, there can be no question that it was void. * * * The authorities are uniform that all process issuing from a court, which by law authenticates such process with its seal, is void if issued without a seal."

In Overton v. Cheek, 22 How. 46, 16 L. Ed. 285, it was held that a writ of error from the United States Supreme Court to a Circuit Court of the United States which has no seal is void.

In Starkey v. Lunz, 57 Or. 147, 110 Pac. 702, Ann. Cas. 1912D, 783, it was held that:

"A court clerk's omission to attach his seal to a writ as required by law is a remediable irregularity only when the statutes authorize such amendment, and since circuit clerks are required to affix their seals to process issued by them, an attachment without such seal is void; the provision of [the statute] permitting amendment of 'proceedings' in furtherance of justice not being enough to authorize amendment by affixing the seal."

In Oelbermann v. Ide, 93 Wis. 669, 68 N. W. 393, 57 Am. St. Rep. 947, it was held:

"If the law provides that an officer shall have an official seal, that his acts shall be certified to under his hand and seal of office, his certificate of verification of a complaint which is not impressed with such seal is void."

In Randall Co. v. Glendenning, 19 Okla. 475, 92 Pac. 158, it is said:

"Under our statute, the only persons authorized to execute an instrument affecting real estate made by a corporation must be an attorney in fact of said corporation, or by

the president or vice president of said corporation, and their signature must be attested by the secretary or clerk with the seal attached; so the signature of two officers of a corporation must be signed to every instrument affecting real estate, otherwise, the same is void, and a void instrument, under the authorities, is not eligible of record.''

In Knapp v. Thomas, supra, it is said:

''A charter of pardon has been sometimes likened to a deed, in this sense, that it is of no force until it is delivered and accepted, * * * but no case can be found which denies that it is matter of record; and, in truth, it is matter of record of so high a nature that no averment can be taken against it.''

In Ex parte Reno, 66 Mo. 266, 27 Am. Rep. 337, it was held that a pardon properly attested, authenticated, and delivered is irrevocable, and is not void although not registered in the office of the Secretary of State where all official acts of the Governor are required to be registered.

We quote from the opinion as follows:

''That a pardon or commutation is a mere matter of grace, and, until this act of clemency is fully performed, neither benefit nor rights can be claimed under it. Simple intention on the part of the executive to bestow a pardon, confers no right, and is perfectly nugatory until the intention may be said to be fully completed. This intention may be said to be fully completed when the pardon is signed by the executive, properly attested, authenticated by the seal of the state, and delivered, either to the person who is the subject of the favor, or to some one acting for him, or on his behalf. Whenever these things are done, the grantee, or donee of the favor, becomes entitled as a matter of right to all the benefits and immunities it confers, and of which he cannot be deprived by revocation or recall.''

The power to pardon, except as limited by the Constitution, extends to every offense against the state known to

the law. The great scope of power thus conferred is a potent reason for holding that, the several safeguards surrounding the exercise of such powers must be fully complied with.

Under the Constitution the power to pardon cannot be treated merely as a privilege. In granting a pardon the Governor exercises a public function, and acts by virtue of his office. It is an official act on the part of the Governor, and such an official act as the law requires to be evidenced by a written instrument to be subscribed by him; it is then the duty of the Secretary of State to countersign and affix the great seal of the state thereto. The object of the constitutional requirement is apparent. The great seal of the state, bearing a device prescribed by the Constitution (article 6, § 35), impressed upon a written instrument bearing the purported signature of the Governor of the state, is the only proper authentication that the signature is genuine, and that the instrument is an official act of the Governor. This is the object and purpose of the requirement. It follows that without such attestation such instrument is not entitled to be registered by the Secretary of State as an official act of the Governor. Beyond the foregoing constitutional provisions as to registration and authentication there is no provision of law in this state directing what procedure shall be followed with respect to giving authentication to purported pardons and paroles.

It is said that a pardon partakes of the nature of a deed of conveyance, in that it must possess all the requirements of validity of a deed of conveyance at common law, one of the essentials being that it shall be issued under seal. Under this rule it is essential that a pardon before delivery must bear the impress of the great seal of the state of Oklahoma as required by the Constitution. Article 6, § 18. This

court is presumed to know who is the chief executive at any given time. The court knows judicially that on the 23d day of October, 1923, the date of the instrument in question, J. C. Walton was Governor; that upon his impeachment and removal from office, M. E. Trapp became, under the Constitution, he being Lieutenant Governor, the acting Governor from the 23d day of October, 1923. However, we have no doubt the instrument in question was signed by J. C. Walton, then Governor.

It follows from what we have said that under the last above quoted sections of the Constitution it is essential to the validity of an instrument purporting to be a pardon that it should be authenticated under the great seal of the state as the official act of the Governor, and we hold that a valid pardon must bear the impression of the great seal of the state before delivery and acceptance by the grantee; without such authentication the instrument in question was at most an attempt to pardon, and was a mere nullity. It is our opinion that, in the absence of such authentication, the instrument in question is insufficient in law to authorize the discharge of petitioner from the imprisonment of which he complains.

The demurrer to the petition is therefore sustained, and the writ denied.

MATSON, P. J., and BESSEY, J., concur.