## Ex parte HENRY L. GUY.

No. A-7144.   Opinion Filed Aug. 27, 1928.
(269 Pac. 782.)

Geo. H. Giddings, for petitioner.

Edwin Dabney, Atty. Gen., and J. H. Lawson. Asst. Atty. Gen., for the State.

EDWARDS, J. This is an original proceeding in habeas corpus. The petitioner alleges, in substance: That he is illegally restrained by the sheriff of Oklahoma county. That in December, 1927, he was convicted for having the unlawful possession of narcotics, and was sentenced to serve a term of one year in the state penitentiary. That no appeal was taken from such judgment, and he was incarcerated in the penitentiary and served two months and four days. That the Governor of the state then issued an order to the warden of the penitentiary, ordering the release of petitioner and the delivery of him to the federal authorities. That petitioner was then taken from the penitentiary and delivered to the federal authorities at Oklahoma City, was confined for some time in the county jail as a federal prisoner, then convicted in the federal court, and sentenced to serve six months in the county jail, which sentence he has fully served. That he is now being held without commitment or warrant for the purpose of returning him to the state penitentiary under the judgment in the state court. The allegations are not controverted, and the facts are either admitted or stipulated in open court.

It is well settled that the power of the state government is sovereign within its territorial limits, except as restricted and limited by the federal Constitution and laws; that the powers of the federal government and of the state government, although covering the same territorial limits, are those of separate and distinct sovereignties, acting separately and independently within their respective spheres. Ableman v. Booth, 21 How. 506, 526, 16 L. Ed. 169. In these separate jurisdictions, each has courts to declare and enforce its laws in common territory. It is highly desirable that there should be no conflict of jurisdiction and that there should be a spirit of reciprocal comity and mutual

assistance. To this end it is generally held that the sovereignty which first takes jurisdiction either of person or property must be permitted to exhaust its remedy before the court of other sovereignty shall take it for its purpose. Covell v. Heyman, 111 U. S. 176, 4 S. Ct. 355, 28 L. Ed. 390; Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879. But to adhere to the strict right of a sovereignty in every case might furnish a criminal an opportunity to avoid the consequences of his crime and permit an accused to use the machinery of one sovereignty to obstruct his trial in the courts of the other. It is at times proper that one sovereignty waive its strict right to exclusive custody to the person of an accused in order that the other sovereignty may also deal with him for crime against it, particularly when the offense against the laws of the latter sovereignty is more serious. For this reason the state courts hold that the fact that a person is serving a sentence for another crime gives him no immunity from a second prosecution. The Supreme Court of the United States also has held that the federal court may waive its strict right to exclusive custody of an accused person, and, although there is no statute expressly giving such authority, the Attorney General of the United States under his general powers of supervision of federal prisoners may waive the exclusive right of the federal government. Ponzi v. Fessenden, supra, and authorities therein cited. In the case of State ex rel. Short, etc., v. White, U. S. Marshal, 39 Okla. Cr. 242, 264 P. 647, the United States surrendered one Art Neff for trial in the court of this state. In these cases the judgment which the accused was serving was not interrupted and the order of commitment not violated. The accused, at the conclusion of his trial, was returned to the federal authorities, and the judgment in the state court took effect

upon the expiration of the judgment in the federal court.

There is introduced in evidence an order, signed by the Governor and attested by the secretary of state under the great seal of the state, which, in substance, recites and directs that petitioner has been convicted and is serving a sentence of one year in the state penitentiary, and orders the warden of the penitentiary to deliver petitioner to the federal authorities. A part of said order is as follows:

"* * * Whereas, it is made to appear that the cause of United States of America v. Henry L. Guy, No. 6554, will be called for trial during the first part of March in the year of 1928, and in order that he may be present in said court for said trial, it is hereby ordered that the warden of the penitentiary deliver the said Henry L. Guy to Ben Dancy, sheriff of Oklahoma county, Oklahoma, to be by him delivered to the custody of the United States marshal for the Western District of Oklahoma, to remain in his custody until said cause No. 6554 in the United States District Court for the Western District of Oklahoma, shall be disposed of, and after the disposition of said cause, if the said Henry L. Guy shall have been convicted in said court, then after the satisfaction of the judgment and sentence pronounced against him in said court that he be returned to the penitentiary at McAlester for the purpose of serving out the sentence as rendered by the district court of Oklahoma county in the case hereinabove referred to. * * *"

Section 10, art. 6, of the state Constitution, in part provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. * * *"

The authority of the Governor to release a convict undergoing sentence is found only in the foregoing section of the Constitution. The exercise of this authority of the Governor shall be attested by the secrecary of the state under the great seal of the state. Section 18, art. 6, Const.; Ex parte Jones, 25 Okla. Cr. 347, 220 P. 978, 34 A. L. R. 206; Jones v. Sneed, 101 Okla 295, 225 P. 700.

The purpose of this regulation obviously is to authenticate his acts and make same a matter of record, so that the authenticity and verity of his acts may not be called in question. The instrument signed by the Governor above referred to is neither a reprieve, commutation, nor parole. It purports to release petitioner from confinement in the penitentiary and to deliver him to another sovereignty absolute and final, except that, if prisoner shall be convicted in the federal court and shall serve his sentence, he shall then be returned to the state authorities. It does not provide that, if acquitted in the federal court, he shall be returned. When convicted in the federal court, petitioner might have been sentenced to incarceration in a federal penitentiary beyond the limits of this state. Surely it cannot be contended, that in such case, at the expiration of his sentence he could have been brought back to this state and again incarcerated in the penitentiary to serve the remainder of his sentence under the judgment in the state court. In the case of Ex parte Youstler, 40 Okla. Cr. 273, 268 P. 323, and Ex parte Middaugh, 40 Okla. Cr. 280, 268 P. 321, this court held that, where an accused person was in constructive custody only and not actually serving a sentence, the rendering of such accused upon requisition to another state as a fugitive by the Governor of this state, waived jurisdiction of his person, but did not satisfy the judgment. When serving a sentence by actual confinement, a dif-

ferent rule obtains. In State v. Saunders, 288 Mo. 640, 232 S. W. 973, the Governor of the state of Iowa, under somewhat similar conditions to that disclosed here, delivered a prisoner undergoing sentence in the penitentiary by an order with the conditions as follows:

"This suspension of sentence is granted upon the recommendation of the board of parole, and is for the purpose of releasing the prisoner to the authorities of Livingston county, state of Missouri, for trial under pending indictments, it being expressly understood that the state of Missouri assumes all expense of his removal and in case of failure to convict the said T. M. Saunders shall be returned to the penitentiary of this state for the completion of his sentence, such return to be without expense to this state. 'The Governor of the state may for cause revoke the foregoing and direct the further execution of the sentence or make other or further order in the case, or modification thereof.' "

This instrument is referred to in a concurring opinion as a "legal curiosity" and one not within the authority of the executive power. The court in syllabus 4 there holds:

"Instrument whereby Governor, on demand for surrender of one who was serving sentence for crime committed in the state, by Governor of other state where he was wanted for other crime committed in such other state, suspended the further execution of the judgment whereby he was sentenced on the condition that he be returned to the state for completion of his sentence on other state's failure to convict him, held a waiver of the right to require the prisoner to complete his sentence before surrender to other state, being in the nature of a pardon which, notwithstanding the condition stated, became absolute upon his surrender to the authorities of other state."

In the body of the opinion, it is said:

"* * * The question arises, therefore, as to whether

it may not properly be regarded as in the nature of a pardon. It released the appellant from the punishment he was undergoing in Iowa, in order that he might be prosecuted for an offense in Missouri. Notwithstanding the condition of this release, we are of the opinion that it became absolute under his surrender to the authorities of this state. If so, then it was unquestionably in the nature of a pardon, and hence the objections here made to the action of the Governor must go for naught. It was so held in Re Hess (5 Kan. App. 763, 48 P. 596 and in State (People) ex rel. v. Hagan (34 Misc. Rep. 24, 69 N. Y. S. 475), supra. * * *"

The power to grant pardons and paroles carries with it the power to make a conditional pardon or parole. It is generally said that the Governor in exercise of this power may impose conditions which are not illegal, immoral, or impossible of performance. Sibenaler v. State, 11 Okla. Cr. 504, 148 P. 678; Ex parte Horine, 11 Okla. Cr. 517, 148 P. 825, L. R. A. 1915F, 548; Ex parte Collins, 32 Okla. Cr. 6, 239 P. 693. To constitute a conditional pardon, however, the condition imposed is not a mere contingency of which the person pardoned has no control, but conditions which properly refer to matters of conduct, deportment, occupation, or the doing or refraining from doing things within the classification stated as legal, moral, and possible. As the federal government may deliver an accused person held by it to the state, so the state may deliver a convict undergoing sentence in a state prison to the federal authorities for the purpose of having him testify or for the purpose of prosecution in the federal courts. The proper practice is for the federal authorities to obtain custody by a writ of habeas corpus ad testificandum or writ of habeas corpus ad prosequendum, as was done in the Ponzi Case and Neff Case, supra. The state then by its proper authority may re-

spect the writ and deliver the person to the federal authorities as a witness or for the trial, and upon the conclusion of his testimony or the completion of his trial he would be returned to the state authorities to complete his sentence. Here, however, this was not done. Petitioner was delivered to the federal authorities not by any judicial act, but by executive order in the nature of a pardon, not for the purpose of their prosecuting him and then returning him to the state authorities for completion of his sentence, but that he might be prosecuted and with no provision made for his return to the state authorities if acquitted, if convicted to be returned only when he had completed his sentence imposed by the federal court. This condition, we think, was beyond the power of the executive to make, and is a nullity. The instrument of the Governor designated as an "order" by which petitioner was delivered to the federal authorities is in legal effect and meaning a pardon as to the penalty remaining under the sentence of the state court, though not a pardon in the full sense as restoring citizenship. Under this view of the act of the Governor and of the law, the petitioner having served his time under the federal sentence, and being now held by the sheriff of Oklahoma county for the state authorities, he is entitled to his discharge.

The writ is awarded, and petitioner discharged.

DOYLE, P. J., and DAVENPORT, J., concur.