## ADAMS v. WATERS, Warden, Oklahoma State Penitentiary.

No. A-11600.   Nov. 14, 1951.

(237 P. 2d 914.)

Clarence P. Adams, pro se.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for respondent.

JONES, J. This is an original action in habeas corpus instituted by the petitioner, Clarence P. Adams, for the purpose of securing his release from confinement in the Oklahoma State Penitentiary.

At a hearing held before this court the following facts were disclosed: On November 30, 1924, petitioner was sentenced to serve a term of twenty-five years imprisonment in the Oklahoma State Penitentiary by the district court of Washington county, upon a conviction which he had sustained for the crime of robbery with firearms; thereafter in May, 1931, the petitioner was released upon parole, and while he was at liberty on parole he was tried and convicted in the district court of Texas county for the crime of robbery with firearms, and on October 24, 1931, was committed to the Oklahoma State Penitentiary to commence serving a term of twenty-five years imprisonment by reason of such conviction; that on January 2, 1943, petitioner was paroled, and on March 8, 1946, the parole of petitioner was revoked, one of the reasons being that, "the said Clarence P. Adams is now under federal indictment in connection with a conspiracy against the laws of the United States Government and is being tried upon such indictment"; that subsequent thereto the petitioner was tried and convicted in the United States District Court for the Northern District of Oklahoma, and sentenced to serve a term of four years imprisonment in the federal penitentiary; that on February 27, 1949, the petitioner completed serving his federal sentence in the United States Penitentiary at Leavenworth, Kansas, and was on that date released by the United States Marshal's office to the Sheriff's office of Leavenworth, Kansas. Petitioner swore that immediately thereafter the Sheriff of Leavenworth, Kansas, delivered the petitioner to an agent representing the warden of the Oklahoma State Penitentiary, who, without giving the petitioner an opportunity to contact his counsel, Mr. Earl James of Oklahoma City, who had been employed to come to the state of Kansas to file a petition for writ of habeas corpus to prevent petitioner from being extradited to the state of Oklahoma, did then and there kidnap the petitioner and carry him across the state line from the state of Kansas to the state of Oklahoma over the protest of petitioner and without his consent; that thereafter the prisoner was returned to the State Penitentiary and is now incarcerated in said institution, serving the sentence imposed upon him for robbery with firearms as hereinabove set forth.

The petitioner contends: First, that the surrender of the legal custody and jurisdiction of the petitioner's person by the Governor of Oklahoma to the United States Government, for the purpose of allowing petitioner to be tried, convicted, and imprisoned in a federal penitentiary, amounted to a surrender of the jurisdiction and legal custody of petitioner. Second, the kidnapping through collusion of the officers of Oklahoma and Kansas and removing him to the State Penitentiary was an illegal act, and that he accordingly is entitled to his discharge from imprisonment.

Petitioner cites the case of Ex parte Guy, 41 Okla. Cr. 1, 269 P. 782, in support of his first contention. Assuming that Ex parte Guy, supra, sets forth the established law, the question for determination in this cause is whether the Governor of Oklahoma voluntarily surrendered and delivered the petitioner to the federal authorities upon condition that he be returned to the State Penitentiary after his release by the federal authorities. There was no testimony at the hearing before this court which would sustain this contention and the supporting papers attached to the petition do not sustain petitioner in this regard. The revocation of the parole recited that the petitioner was under indictment by the federal court and was at that time being tried in the United States District Court for the Northern District of Oklahoma at Tulsa. It would appear from this that the petitioner was in custody of the federal officials who were holding him pending his trial on an indictment at the time that the Governor of Oklahoma revoked his parole, and

430

that the said court retained the petitioner in custody, tried him upon an indictment pending against him, and later committed him to the United States Penitentiary in Leavenworth.

The proof before this court by Earl James, attorney for the petitioner, and by James R. Studdard, deputy sheriff of Leavenworth, Kansas, was that the petitioner was delivered into the custody of the sheriff of Leavenworth, Kansas, on February 27, 1949, and that an agent from the Warden of the Oklahoma State Penitentiary was present with proper extradition papers at the time the prisoner was received in the sheriff's office, and that immediately he was delivered by the deputy sheriff of Leavenworth to the Oklahoma agent, over the protest of the prisoner, for the purpose of transferring him back to the Oklahoma State Penitentiary.

Both Oklahoma and Kansas have the Uniform Criminal Extradition Act, 52 O.S. 1951, § 1141.1 et seq., G. S. Kan. 1949, 62-727 et seq., and under the terms of that act any person who is arrested by virtue of a warrant issued by the Governor of the asylum state upon a requisition of the Governor of any other state "shall not be delivered to the agent of such state * * * until notified of the demand made for his surrender, and given twenty-four (24) hours to make demand for counsel:", and ample time is to be given for the purpose of suing out a writ of habeas corpus. 22 O.S. Ann. § 1141.10.

Under the record before us, the officers of Kansas did not wait the required twenty-four (24) hours before delivering petitioner to the agent of the Oklahoma State Penitentiary and the sole remaining question for determination in this cause is what effect this had upon the validity of the present incarceration of the prisoner in the Oklahoma State Penitentiary. In 22 American Jurisprudence, Sec. 65, Extradition, it is stated:

"The majority of cases hold that where a person accused of a crime is found within the territorial jurisidiction of the state wherein he is so charged, the right to put him on trial for the offense charged is not defeated or impaired by the fact that he was brought from another jurisdiction by means of abduction."

In the case of Ex parte Youstler, 40 Okla. Cr. 273, 268 P. 323, this court held:

"Where a person is convicted in this state for a felony and appeals from such conviction, and pending such appeal is released by supersedeas, and while at liberty is delivered by the Governor of this state to a sister state by extradition proceedings, such delivery is a waiver of the jurisdiction of this state over the person and a waiver of the right of the state to demand the return of such person thereafter as a fugitive from justice. The honoring of the requisition does not satisfy the judgment, and, if thereafter such convicted person be brought or be apprehended within this state and jurisdiction of his person is acquired, he may be required to satisfy the judgment of conviction in this state. In such case this court, by habeas corpus, will not inquire into the manner by which jurisdiction of his person is obtained.

In the body of the opinion it is stated:

"It may be conceded that, where a person is convicted in this state and pending his appeal, while at liberty on the supersedeas bond, is delivered by the Governor under requisition to a sister state, such delivery amounts to a waiver of the jurisdiction of this state over his person, and when, under such requisition, he is taken out of the state, he is not a fugitive, and this state would not have the right thereafter to extradite him from another state as a fugitive. State v. Allen, 2 Humph. (Tenn.) 258. It cannot be said, however, that this act of the Governor constitutes a pardon under the Constitution and laws of this state. A pardon is an act of grace, in effect a private deed of the executive, delivery of which is essential to its validity. It exempts the individual upon whom it is bestowed from punishment

which the law imposes for the crime for which he is convicted, and the crime is forgiven and the punishment remitted. Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 47 L.R.A., N.S., 1036; Stewart v. State, 11 Okla. Cr. 400, 146 P. 921; Ex parte Ray, 18 Okla. Cr. 167, 193 P. 635; Ex parte Jones, 25 Okla. Cr. 347, 220 P. 978, 34 A.L.R. 206; Ex parte Collins, 32 Okla. Cr. 6, 239 P. 693.

"To be effective as a pardon, the instrument purporting to be such must be authenticated under the great seal of the state as the official act of the Governor. Ex parte Jones, supra.

"The honoring of the requisition from the state of Missouri by the Governor of this state is not a pardon. As stated, it is a waiver of the jurisdiction of the state * * to demand his return to the state. It does not satisfy the judgment of conviction; This can be satisfied only by the serving of the sentence imposed or by its remission by pardon. The expiration of time without imprisonment is not an execution of the sentence. Ex parte Eldridge, 3 Okla. Cr. 499, 106 P. 980, 27 L.R.A., N.S., 625, 139 Am. St. Rep. 967; Berstein v. U. S., 4 Cir., 254 F. 967, 3 A.L.R. 1569, notes."

In the case of State v. Wellman, 102 Kan., 503, 170 P. 1052, 1054, L.R.A. 1918D, 949, the Supreme Court of Kansas had a similar cause before them for determination. There the prisoner contended, and the Supreme Court assumed, for the purpose of its decision, that the arrest and removal of the defendant from Missouri to Kansas was in violation of defendant's legal rights. In the opinion it is stated:

"The want of statutory authority for the arrest does not defeat the jurisdiction of the court before which the accused is brought. Even a forcible abduction from another state is generally regarded as not having that effect. 19 Cyc. 99 [Ex parte Davis, 51 Tex. Cr. 608, 103 S.W. 891]; 12 L.R.A., N.S., 225 [Kingen, v. Kelley, 3 Wyo. 566, 28 P. 36]; 15 L.R.A. 177. The conclusion that the want of statutory authority to bring the defendant in this case from Missouri into Kansas does not prevent his trial and punishment after he has been lodged in custody here, as the result of his surrender by the Missouri authorities, results logically from the decision of this court in Re Flack, 88 Kans. 616, 120 P. 541, 47 L.R.A., N.S., 807, Ann. Cas. 1941 P, 789. * * *

"In Re Moyer, 12 Idaho 250, 85 P. 897, 12 L.R.A., N.S., 227, 118 Am. St. Rep. 214 (affirmed in Morey v. Whitney, 203 U.S. 222, 27 S. Ct. [121], 51 L. Ed. [160], 7 Ann. Cas. 1047, the authorities on the subject are collected, and the grounds of this view are well stated in this language: 'We are of the opinion that after the prisoner is within the jurisdiction of the demanding state, and is there applying to its courts for relief, he cannot raise the question as to whether or not he has been, as a matter of fact, a fugitive from the justice of the state within the meaning of the federal Constitution and the act of Congress. A careful and diligent examination of the many authorities touching upon this subject, and the reasons that exist for invoking the aid of the writ in such cases, convince us that the question as to whether or not a citizen is a fugitive from justice is one that can only be available to him so long as he is beyond the jurisdiction of the state against whose laws he is alleged to have transgressed. It is a remedy which does not go to the merits of the case, and does not involve the inquiry as to whether or not he is in fact guilty or innocent of the offense charged. It is a remedy that merely goes to the question of his removal from the jurisdiction in which he is found to the jurisdiction against the laws of which he is charged with offending. If these views be correct, and we believe they are, it follows that so soon as the prisoner is within the jurisdiction of the demanding state, both the reason and object for invoking this principle of law have ceased and can no longer have any application.' "

The Supreme Court of the United States in the case of Pettibone v. Nichols, 203 U.S. 192, 27 S. Ct. 111, 114, 51 L. Ed. 148, ruled that a person held in actual custody by a state for trial in one of its courts under an indictment for a crime against its laws will not be released on habeas corpus because the methods by which his personal presence in the state was secured may have violated the provisions of U.S. Const. art. 4, § 2, or U.S. Rev. Stat. § 5278 [1948 Revised Criminal

Code, 18 U.S.C.A. § 3182], relating to extradition proceedings. In the opinion it is stated:

"But the petitioner contends that his arrest and deportation from Colorado was, by fraud and connivance, so arranged and carried out as to deprive him of an opportunity to prove, before the governor of that state, that he was not.a fugitive from justice, as well as opportunity to appeal to some court in Colorado to prevent his illegal deportation from its territory. If we should assume, upon the present record, that the facts are as alleged, it is not perceived that they make a case of the violation of the Constitution or laws of the United States. It is true, as contended by the petitioner, that if he was not a fugitive from justice, within the meaning of the Constitution, no warrant for his arrest could have been properly or legally issued by the governor of Colorado. It is equally true that, even after the issuing of such a warrant, before his deportation from Colorado, it was competent for a court, Federal or state, sitting in that state, to inquire whether he was in fact, a fugitive from justice, and, if found not to be, to discharge him from the custory of the Idaho agent, and prevent his deportation from Colorado. Robb v. Connolly, 111 U.S. 624, 639, 4 S. Ct. 544, 28 L. Ed. 542, 547; Ex parte Reggel, [114 U.S. 642, 5 S. Ct. 1148, 29 L. Ed. 250], supra; Hyatt v. New York, 188 U.S. 691, 719, 23 S. Ct. 456, 47 L. Ed. 657, 664; Munsey v. Clough, 196 U.S. 364, 374, 25 S. Ct. 282, 49 L. Ed. 515, 517. But it was not shown by proof before the governor of Colorado that the petitioner, alleged in the requisition papers to be a fugitive from justice, was not one, nor was the jurisdiction of any court sitting in that state invoked to prevent his being taken out of the state and carried to Idaho. That he had no reasonable opportunity to present these facts before being taken from Colorado constitutes no legal reason why he should be discharged from the custody of the Idaho authorities. No obligation was imposed by the Constitution or laws of the United States upon the agent of Idaho to so time the arrest of the petitioner, and so conduct his deportation from Colorado, as to afford him a convenient opportunity, before some judicial tribunal sitting in Colorado, to test the question whether he was a fugitive from justice, and, as such, liable, under the act of Congress, to be conveyed to Idaho for trial there. In England, in the case of one arrested for the purpose of deporting him to another country, it is provided that there shall be no surrender of the accused to the demanding country until after the expiration of a specified time from the arrest, during which period the prisoner has an opportunity to institute habeas corpus proceedings. Extradition Act of 1870, 33 and 34 Vict. chap. 52, § 11; 2 Butler, Treaty-Making Power, § 436; 1 Moore, Extradition, 741, 742. There is no similar act of Congress in respect of a person arrested in one of the states of the Union as a fugitive from the justice of another state. The speediness, therefore, with which the Idaho agent removed the accused from Colorado, cannot be urged as a violation of a constitutional right, and constitutes no legal reason for discharging him from the custody of the state of Idaho."

See, also, Ker v. People of State of Illinois, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421, wherein it was shown the prisoner was kidnapped in Peru and brought to the state of Illinois where he was tried and convicted. The Supreme Court of the United States affirmed the conviction and held that the principle upon which the judgment rested was that, when a criminal is brought, or is in fact within the jurisdiction and custody of a state, charged with a crime against its laws, the state may, so far as the Constitution and laws of the United States are concerned, proceed against him for that crime, and the court will not inquire as to the particular methods employed to bring him into the state.

In Mahon v. Justice, 127 U.S. 700, 8 S. Ct. 1204, 32 L. Ed. 283, Mahon, who was charged with murder in Kentucky, was taken by a body of armed men without a warrant or other legal process in West Virginia and delivered to the jailer of Pike County, Kentucky. The Supreme Court of the United States refused to grant him relief and in effect held that whether Congress might not provide for the compulsory restoration to the state of parties wrongfully abducted from its territory upon application of the parties, or of the state, and whether such provision would

not greatly tend to the public peace along the borders of the several states, are not matters for present consideration. It is sufficient now that no means for such redress through the courts of the United States have as yet been provided.

It appears to us from the foregoing authorities that the prisoner is now lawfully confined in the State Penitentiary. There was no written instrument executed by the Governor and attested by the Secretary of State releasing the prisoner to the federal authorities such as was before this court for construction in Ex parte Guy, supra. Since the paroles were legally revoked, the prisoner now stands lawfully committed to the penitentiary until said sentences are served or he is otherwise discharged in accordance with the provisions of the law.

The writ of habeas corpus is denied.

BRETT, P. J., concurs.