In the Matter of the Application of Franklin O'Neal BUTLER, alias Wilbur Carl Sweeton, for Writ of Habeas Corpus.

No. A–12813.

Court of Criminal Appeals of Oklahoma.

Oct. 28, 1959.

James M. May, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BRETT, Judge.

This is an original action by petition for habeas corpus whereby the petitioner seeks relief from custody by Hon. Clarence O. Hurt, Sheriff of Pittsburg County, Oklahoma, who has him in custody by virtue of a hold order in favor of the State of Texas. It appears that the petitioner was charged in Hunt County, Texas, with the commission of the crime of unlawfully breaking and entering a house located thereon on or about April 17, 1957, and also as a prior offender under three former convictions, i. e., burglary, passing forged instruments, and theft of personal property. Before pleading to this charge, he removed himself to Oklahoma, where he was charged and convicted of the crime of burglary in the second degree and sentenced, on November 20, 1957, to three years in the Oklahoma State Penitentiary. On this conviction he was delivered to the penitentiary. Before completion of his service of the Oklahoma sentence, the District Attorney of Hunt County, Texas, on February 13, 1959, obtained an executive order from the office of the Governor of Oklahoma, for petitioner's return to Texas to answer the charge there pending against him. The order releasing him to Texas recited:

"Whereas, there is on file in the Pardon and Parole Office a letter signed by O. S. Moore, District Attorney, 8th Judicial District, Hunt County, Greenville, Texas, requesting that this subject be released to the care and custody of the Sheriff of Hunt County, Greenville, Texas, or his authorized agent in order that he may appear in Court and answer to charges of burglary and two additional counts charging him as an habitual criminal.

"Whereas, it is understood that subject will be in the care and custody of the Sheriff or his authorized agent of Hunt County, Texas, and that when the purpose for which subject has been released is satisfied that he be returned to the Warden of the Oklahoma State Penitentiary at McAlester, Oklahoma.'

It is further understood that all costs in this connection be borne by Hunt County, Texas.

"Now, Therefore, I, J. Howard Edmondson, the Governor of the State of Oklahoma, by virtue of the power and authority vested in me, do hereby grant unto Wilber Carl Sweeton, Number 60115, a leave for as long as he is needed by O. S. Moore, District Attorney of Hunt County, Texas but upon the expiration of said time subject must return to the Oklahoma State Penitentiary, where he will serve out that portion of his sentence unfinished according to the original sentence and judgment of the Court."

The petitioner was returned to Texas under the limitations of the executive order where he entered a plea of guilty and was sentenced, on March 10, 1959, to a term of from two to twelve years in the Texas State Penitentiary. Under the agreement with Oklahoma, the State of Texas then returned him to Oklahoma to complete the service of his Oklahoma sentence, which he did on August 20, 1959. The State of Texas placed a hold order on the petitioner with the Oklahoma authorities under date of November 27, 1957, upon which he is now being held, and the further information that if the petitioner did not waive extradition proceedings, the same would be instituted. Relief was sought in the District Court of Pittsburg County, Oklahoma, by habeas corpus and denied, whereupon this original action was instituted in this Court.

■　On this state of facts the petitioner contends that his delivery by the State of Texas back to the Oklahoma authorities after his plea of guilty, and judgment and sentence, was voluntary; without any legal agreement for his return to Texas; and was a waiver of Texas' jurisdiction and its right to now demand his return because he is not a fugitive from justice and subject to involuntary return or extradition to the State of Texas. The precise question thus presented is is the petitioner a fugitive from

justice within the meaning of the Uniform Extradition Act and subject to be returned to Texas?

In Ex parte Foster, 60 Okl.Cr. 50, 61 P.2d 37, 40, we said:

"In People ex rel. MacSherry v. Enright, 112 Misc. 568, 184 N.Y.S. 248, 253, this (that) court in part said:

" 'The constitutional provision regarding extradition from one state to another was adopted to promote justice, to aid the states in enforcing their laws, and not to shield malefactors. The Supreme Court of the United States has emphatically announced its adherence to the doctrine that a faithful and vigorous enforcement of the provisions relating to fugitives from justice is vital to the harmony and welfare of the state, and that, while a state should take care that the rights of its people are protected against illegal action, both it and the judicial authorities throughout the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted, as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state.

" 'The action of the Governor in issuing his warrant should not be nullified by the courts, unless it conclusively appears that the accused is not a fugitive from justice and that the issuance of the warrant was in plain contravention of law.'

"See Appleyard v. [State of] Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073; Compton v. [State of] Alabama, 214 U.S. 1, 29 S.Ct. 605, 53 L.Ed. 885, 16 Ann. Cas. 1098; Commonwealth v. Superintendent of Philadelphia County Prison, 220 Pa. 401, 69 A. 916, 21 L.R.A., N.S., 939."

In Ex parte Jackson, 97 Okl.Cr. 289, 262 P.2d 722, at pages 723, 724, and 725, this Court said:

"In 13 A.L.R. 415 the rule is thus stated:

" 'The decided weight of authority is to the effect that the mission, motive, or purpose inducing a person accused of being a fugitive from justice to leave the demanding state is immaterial, and that the courts of any asylum state will not consider such elements in an extradition proceeding, but will be satisfied by a simple showing that, having within the demanding state committed that which by its laws constitutes a crime, when the alleged fugitive is sought to be subjected to its criminal process to answer for his offense, he has voluntarily left its jurisdiction and is found within the asylum state.'

"To the same effect is 22 Am.Jur., Extradition, Sec. 23.

"Decisions from most of the states in the Union, including Oklahoma, are cited in support of this majority rule. In 35 C.J.S. Extradition § 10, p. 327, it is said:

" 'The mode or manner of a person's departure from the state generally does not affect his status as a fugitive from justice; so the fact that a person's departure was involuntary or under legal compulsion will not, under most authorities, preclude his extradition as a fugitive from justice'.

"Oklahoma first became committed to the majority rule in the early case of Ex parte Williams, 10 Okl.Cr. 344, 136 P. 597, [51 L.R.A.,N.S. 668], * * *.

"Later, the majority rule was followed in the case(s) of Ex parte Hamilton, 41 Okl.Cr. 322, 273 P. 286; Ex parte Baker, 33 Okl.Cr. 413, 244 P. 459; In re Gundy, 30 Okl.Cr. 390, 236 P. 440."

In Ex parte Foster, supra [60 Okl.Cr. 50, 61 P.2d 40], this Court agreed with New York, stating:

"It is well settled that a person may be a fugitive from justice within the meaning of the provisions of the Federal Constitution and laws concerning

extradition after his conviction as well as before."

Neither the Attorney General nor counsel for the petitioner cite any case in point with this situation, but both point to Ex parte Guinn, 162 Tex.Cr.R. 293, 284 S.W. 2d 721, 722, as being analogous. Therein, the Court of Criminal Appeals of Texas said:

"Appellant, in asking for a reversal of this judgment, relies upon proof that he was incarcerated in the county jail of Beckham County, Oklahoma, under a complaint charging him with burglary at the time he was surrendered to the Sheriff of Potter County, Texas, for transmittal to Texas to there answer a criminal charge and that such burglary charge in Oklahoma was not dismissed. His position is that since he was brought to Texas involuntarily he could not be a fugitive from justice in Oklahoma. He further contends that since the officials of Beckham County, Oklahoma, voluntarily surrendered the possession of appellant's person to the Texas officers before they had prosecuted him under the complaint there pending they should be estopped to ask for the appellant's return.

"We have concluded that appellant's first contention is answered by paragraph two of Section 5 of the Uniform Criminal Extradition Act, Vernon's Ann.C.C.P. art. 1008a, § 5, which reads as follows:

" 'The Governor of this State may also surrender on demand of the Executive Authority of any other state any person in this State who is charged in the manner provided in Section 23 of this Act with having violated the laws of the state whose Executive Authority is making the demand, even though such person left the demanding state involuntarily.'

" * * * Section 25B of the Uniform Act provides that nothing in the act shall be construed as a waiver of the right, power or privilege of a State to regain custody of a demanded person for the purpose of trial. This section of the act disposes of appellant's second contention."

The statutory quotation supporting the opinion is identical with 22 O.S.1951 § 1141.5, Uniform Extradition Act as adopted in Oklahoma.

Our research has brought our attention to a case involving a situation almost exactly in point with the situation herein, which case was decided under the provisions of the Uniform Extradition Act here involved. We refer to Rau v. McCorkle, 47 N.J.Super. 36, 135 A.2d 224, 225, 226. There, Rau and others were being held for trial by New Jersey. Prior to trial, the Governor of New Jersey and the Governor of New York entered into an agreement whereby the defendants would be released to New York for trial on criminal charges pending against them there on the express condition that after prompt trial in New York they should be returned to New Jersey, "to await trial in the State of New Jersey." Prior to their removal to New York under this agreement, three of the defendants were tried and sentenced to prison terms. They were removed to New York, pled guilty to the charges against them there, were sentenced, and redelivered to New Jersey. The Court held:

"Principles of comity as between sovereigns amply warranted New Jersey, which had possession of and jurisdiction over plaintiffs in respect of crimes they were convicted of and charged with here, to surrender them to New York for prosecution on charges pending against them there conditionally upon their redelivery here after disposition of the charges in New York. 22 Am.Jur., Extradition § 64, p. 302; see Ex parte Lovingood, 58 Okl.Cr. 336, 53 P.2d 290 * * *; Werntz v. Looney, 10 Cir., 1953, 208 F.2d 102, 104; Lunsford v. Hudspeth, 10 Cir., 1942, 126 F.2d 653, 655. The arrangement thereby consummated served the public policy that plaintiffs

should have the benefit of their constitutional right to a speedy trial or other disposition of the New York charges which would take place at a time when the evidence to be relied on by both sides was fresh, at the same time securing to New Jersey its right to exact prior satisfaction from plaintiffs for their depradations here. Ibid. In that procedure plaintiffs can point to no deprivation or impairment of any right of substance.

\* \* \* \* \* \*

"It is also argued that the extradition to New York constituted a pardon, or at least a waiver of jurisdiction, by the Governor of New Jersey. These contentions are patently baseless. They assume the absence of power to do what was done, and we have held that position to be devoid of merit."

█ We must add that a waiver of Texas' right to the accused can not be effected by a District Attorney.

"The function seems properly to be that of the Governor alone, and the Governor in the exercise of any such right of waiver acts solely under the exercise of executive power."

People ex rel. Tyrian v. Adam, Sup., 74 N.Y.S.2d 57, 63. It is apparent that there was neither exercise of executive power or authorization from the Governor of Texas therefor which would effect a waiver of jurisdiction.

Another case closely paralleling the case at bar is Spencer v. Hamilton, 8 Cir., 12 F. 2d 976, 977. Spencer, a federal prisoner, was taken to Texas to there answer a charge and thereafter to be returned to Leavenworth Penitentiary to finish service of his federal sentence. The identical contention was made therein, "that he was not a fugitive from justice;" his argument in effect being that after his return to Texas for trial, he was voluntarily surrendered by Texas authorities and permitted to leave Texas and return to Kansas. It appears the petitioner therein was a fugitive from Texas when he ran afoul of the law in Utah and was sentenced to the federal penitentiary. In that case, 12 F.2d at page 977, it was said:

"It is apparent that appellant was a fugitive from justice at the time he was apprehended, tried, and convicted in Utah upon the federal charge. His sentence, removal, and imprisonment to and in the penitentiary at Leavenworth, Kan., still outside the state of Texas, did not alter that status. The application for his removal to the latter state for trial was made under the doctrine announced \* \* \* in Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879, in which such procedure was recognized. \* \* \* Under the conceded facts Spencer never ceased to be, in a legal sense, a fugitive from justice, and the state of Texas did not voluntarily relinquish over his person a control and custody which it never acquired. \* \*

" ' \* \* \* This arrangement of comity between the two governments works in no way to the prejudice of the prisoner or of either sovereignty.' "

█ As contended by the defendant, this Court and other jurisdictions has held that the Governor of one state may waive its jurisdiction in favor of another state. Adams v. Waters, 94 Okl.Cr. 428, 237 P. 2d 914; Ex parte Youstler, 40 Okl.Cr. 273, 268 P. 323; Samet v. McLeod, Okl.Cr., 291 P.2d 836. But, *here we are not confronted with such a situation.* There was no execution of any instrument by which Texas waived its jurisdiction and no conduct of its Executive Department indicating any intent to do so. Texas only acted in a spirit of comity with Oklahoma, if not in compulsion, in returning this petitioner to Oklahoma to complete his Oklahoma sentence. It cannot be overlooked that he was taken to Texas for the limited purpose of answering the charge there pending against him under the positive agreement that he would be returned to Oklahoma after the limited purpose had been

served and for which he was delivered to the Texas authorities. Hence, Texas' delivery to Oklahoma of the petitioner can in no sense be considered voluntary but was under compulsion by virtue of the conditions by which Texas impliedly agreed to be bound. The petitioner was loaned to Texas by Oklahoma for the limited purpose of trial, and under the Executive Order by which Texas acquired him, he was to be returned to Oklahoma. The rules of comity between the states required fulfillment of this obligation, and there was no voluntary relinquishment of jurisdiction by Texas such as is required to work a waiver as contended by the petitioner.

The cases relied upon by petitioner are not in point with this situation. In extradition, to support the claim of waiver against the demanding state, it must clearly appear that the asserted waiver was made by or under authority of the Governor of the demanding state in exercise of executive authority and the facts on which the alleged waiver is based must be of such character as to support voluntary relinquishment of jurisdiction. No such condition exists in this case and this petitioner is subject to extradition to Texas. The writ of habeas corpus is denied.

POWELL, P. J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

I cannot agree that where one commits a crime against a state, is apprehended, convicted and confined, can be voluntarily released and delivered to a sister state without condition, reservation, or qualification, or extradited to another state before the expiration of his punishment, and then be returned to that state as a fugitive from justice. A state has the inherent right and duty to apprehend and punish those who violate her laws and to keep them in custody until the punishment is completely satisfied, but to deliver him to another state without condition, agreement, or qualification prior to the expiration of his punish-

ment waives the right to return the prisoner. It, in the opinion of this writer constitutes a waiver of jurisdiction. It was said in People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 521, 147 A.L.R. 935:

"That a prisoner cannot be handed from one jurisdiction to another for the purpose of trial, conviction and service of a new sentence before being returned to the asylum State for service of the unexpired sentence, without violating his constitutional rights."

I cannot agree with the majority opinion which in substance proclaims that the adoption of the Uniform Extradition Act serves as a complete barrier to the aged and time-honored rule that a state may waive jurisdiction of a prisoner by its voluntary release. However in the opinion of this writer this constituted an erroneous construction of that Act; the person sought to be extradited must be substantially charged with a crime against the demanding state and to be a fugitive from justice. How can it be said that petitioner, who was loaded in a car by the Texas authorities and delivered to the prison at McAlester, is considered to be a fugitive from Texas?

I have been led to believe that the practical definition of the term "fugitive" is "one who with knowledge that he is being sought pursuant to court process absents himself or flees" or "one who commits a crime in one state and then withdraws himself from that state without waiting to abide the consequences of his act." It is peculiarly coincidental that one of the early land mark cases on the subject involved the same demanding state, wherein Texas attempted to extradite a prisoner from the state of California under a most similar set of facts. In re Whittington, 34 Cal. App. 344, 167 P. 404 the California court said:

"One is not a fugitive from justice from the state of Texas, so as to be subject to extradition thereto, where, having been arrested in that state for

an offense there committed, he was with permission of its authorities taken on process under extradition to the state of California there to answer to a charge of having committed a crime, though the latter charge was later dismissed."

It is unnecessary to elaborate on this subject as I have heretofore expressed my opinion in a rather lengthy dissent involving the same question in the case of In re Langley, Okl.Cr., 325 P.2d 1094 where numerous authorities are cited to support my stand.