William E. FERNBAUGH, Petitioner,

v.

Clarence O. HURT, Sheriff of Pittsburg County, Oklahoma, and Sergeant Buck Halsell, Captain Allen R. Templeton, and Captain W. D. Mitchell, Respondents.

No. A–12925.

Court of Criminal Appeals of Oklahoma.

Aug. 3, 1960.

Robert A. Layden, Layden & Layden, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

POWELL, Presiding Judge.

Petitioner, William E. Fernbaugh, seeks release from the county jail of Pittsburg County, where he was placed by the Warden of the Oklahoma State Penitentiary at McAlester on completion of a sentence to that institution, by reason of a "Hold" order from the State of Arkansas. The Governor of Oklahoma on May 17, 1960, approved extradition proceedings filed with him by the Governor of Arkansas and issued a warrant on Foreign Requisition. The papers show that petitioner is charged in Arkansas with escape from the Arkansas penitentiary. The District Court of Pittsburg County on June 14, 1960 denied petitioner release by way of writ of habeas corpus and thereafter an original petition for writ was filed in this Court. The same came on for hearing on July 28, 1960 and the case was submitted on petition, response by the State, transcript of testimony taken in the District Court of Pittsburg County, and brief of petitioner.

To commence with, petitioner had been committed to the Arkansas State Penitentiary for Robbery, for which he was sentenced to serve fifteen years. The Arkansas authorities charge that on or about May 5, 1949 he escaped from their penitentiary. Petitioner alleges that he was paroled until May 4, 1949 when the then Governor of Arkansas revoked his parole. At all events petitioner went to Missouri and there was charged with the plead guilty to robbery on October 22, 1949 and was committed to the Missouri State Penitentiary until his sentence was commuted on May 1, 1959, when he was delivered to the Sheriff of Coal County, Missouri by reason of "hold" requests from both the State of Oklahoma, and the State of Arkansas.

The evidence shows that two officers from the State of Arkansas came to the county jail of Coal County, Missouri to take steps for the extradition of petitioner to Arkansas and on the same day two officers from Oklahoma arrived for the same purpose. The Arkansas officers permitted the Oklahoma officers to proceed first for petitioner's custody and thereafter placed a "hold" request with the Warden of the Oklahoma State Penitentiary after petitioner was convicted on a plea of guilty of crime in Muskogee County, Oklahoma and sentenced to that institution.

It further appears that the Sheriff of Muskogee County, Oklahoma, had, on April 8, 1959 written Mr. Lee Henslee, Superintendent of the Arkansas State Penitentiary, Grady, Arkansas, saying that he would appreciate it if he would waive his "hold" in favor of Oklahoma. The Sheriff stated: "We will continue with the extradition and if for any reason you feel your hold should come first advise and we will waive in your favor. If and when custody is granted we will place a hold on Fernbaugh for you".

Mr. Henslee then on April 20, 1959 wrote the Sheriff of Coal County, Jefferson, Missouri, about the planned extradition proceedings from Oklahoma, and stated: "In the event that Muskogee, Oklahoma does not obtain custody I wish you would take custody for me and wire collect so that I might commence extradition for escape from the Arkansas State Penitentiary." Then on April 25, 1959 followed a similar letter and asking to be wired or 'phoned.

Counsel in his brief as basis for release of petitioner, argues:

"In the case at bar there is no question but that the Governor of the State of Arkansas has a right to revoke the furlough of the petitioner and when his sentence was commuted in the State of Missouri, to demand his return to the State of Arkansas. This is clearly set forth in the case set out by the Attorney General in his response in this case, Ex parte Foster, 60 Okl.Cr. 60 [50], 61 P.2d 37. It is because the governor had the right and did revoke petitioner's parole, and because the Governor of Arkansas knew where the petitioner was, as shown by the detainer, and because the Governor had the right to demand his return to Arkansas, and because the State of Missouri was willing to permit the petitioner to be extradited and the petitioner was willing to return to Arkansas—it is because of these facts that the permitting of the petitioner to be taken to Oklahoma constituted a waiver of jurisdiction by the State of Arkansas."

Petitioner cites the case of Ex parte Hart, 95 Okl.Cr. 269, 244 P.2d 859 and Adams v. Waters, 94 Okl.Cr. 428, 237 P.2d 914 as supporting his theory. These cases hold among other things, that the authorization by the Governor of the delivery of a prisoner to another jurisdiction so that he may be tried or imprisoned in another state is a waiver of the jurisdiction of this state over the person of the prisoner, but it does not amount to a pardon and does not satisfy the judgment of conviction, and where the prisoner thereafter found in this state he may be lawfully committed to the penitentiary to serve the unexpired sentence.

■■■■ The above cases are not in point for two reasons: First, the Governor of Arkansas through his officers never did get custody of the Petitioner in Coal County, Missouri. The extradition papers from Oklahoma were honored. Both states had "hold" requests with the Sheriff of Coal County, Missouri. Suppose there had been a dozen other states with "hold" requests. But one state could get the petitioner at one time. It is problematical which requisition would have been honored by the Governor of Missouri if both Oklahoma and Arkansas had insisted on custody of the petitioner. At all events Arkansas stood by and let Oklahoma get the prisoner.

Second, not only was the prisoner never in the custody of the Arkansas officers, if he had been technically in custody of Arkansas officers, the waiver to be good would have had to have been made by someone authorized to make such waiver.

See: In the matter of the Application of Butler, etc., Okla.Cr., 346 P.2d 348, 349, where in paragraph 7 of the syllabus, this Court said:

"In extradition, to support the claim of waiver against the demanding state, it must clearly appear that the asserted waiver was made by or under authority of the Governor of the demanding state in exercise of executive authority and the facts on which the alleged waiver is based must be of such character as to support voluntary relinquishment of jurisdiction."

See also, In the Matter of the Habeas Corpus of Langley, Okl.Cr., 325 P.2d 1094, where it was contended that California waived its right to claim that Langley was a fugitive because he was in a California jail and the California Parole officer visited him and did nothing to prevent Oklahoma officers from removing him to Oklahoma after Langley had signed a waiver of extradition proceedings. This argument was rejected.

The extradition papers from the Governor of Arkansas approved by the Governor of Oklahoma on May 17, 1960 appear regular on the face. The matter concerning the revocation of petitioner's parole in Arkansas or whether he is an escapee from the Arkansas State Penitentiary are matters to be settled in the Arkansas courts.

Writ denied.

BRETT and NIX, JJ., concur.